Carl Alvin SIMONS, Plaintiff,

v.

**CHICAGO GREAT WESTERN RAIL-
WAY COMPANY, Defendant.**

Civ. No. 64–C–2014–C.

United States District Court
N. D. Iowa,
Central Division.

Dec. 22, 1966.

Donald E. O'Brien, U. S. Atty., Sioux City, Iowa, for plaintiff.

Hubert Jones, Des Moines, Iowa, for defendant.

## MEMORANDUM AND ORDER.

HANSON, District Judge.

Plaintiff Simons has instituted this action under the Universal Military Training and Service Act, 50 U.S.C.App. Section 459, claiming damages due to refusal of the Chicago Great Western Railway Company to restore him to his rightful seniority rights as a fireman with that railroad. In the fall of 1957, plaintiff took a physical for railroad employment with the Clarion, Iowa Division, filled out an application, and began a series of eight "student trips." The trainmaster gave plaintiff a "letter" which was signed and dated by the engineer of each particular trip. Plaintiff also filled out a book of rules which he turned into the trainmaster along with the letter upon completion of his student trips.

However, plaintiff never made a paid trip before he was inducted into the service on October 12, 1958. A new fireman is not assigned regular duties and works on "extra board" runs. Extra board was not available prior to plaintiff's entry into the armed services.

From June 9, 1959, through August 14, 1959, nine new men were hired. Plaintiff returned on leave from June 5, 1960 through June 16, 1960. He was wired a "foreign pass" so that he could return. A foreign pass is only issued to those who have worked with the railroad for a year. While home he made his first paid trip on extra board. Extra board stood on an increase and he made three trips in all.

When plaintiff was discharged from the service on October 12, 1960, he discovered that the nine men that had been hired during his absence had acquired seniority over him. Plaintiff made efforts to get his seniority changed to no avail. The General Chairman of the Brotherhood of Locomotive Firemen and Enginemen and the Vice-President of personnel of the railroad dated his seniority from June 9, 1960, the date of his first paid service.

Defendant contends that plaintiff did not attain the status of fireman for the purpose of establishing his seniority rights until June 9, 1960. The case turns upon whether plaintiff was in the "employ of any employer" when he left for the armed forces on October 12, 1958.

At the outset, it must be recognized that the Universal Military Training and Service Act " * * * is to be liberally construed for the benefit of those who left private life to serve their country * * *." Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 285, 66 S.Ct. 1105, 1111, 90 L.Ed. 1230 (1946). In light of such a policy, a variety of employer-employee relationships have been held to be within the purview of the Act which, under the orthodox rules, could not be construed as such. MacMillan v. Montecito Country Club, D. C., 65 F.Supp. 240.

Two recent Supreme Court decisions shed considerable light on the issue in the case at hand. See Tilton v. Missouri Pacific Railroad Co., 376 U.S. 169, 84 S. Ct. 595, 11 L.Ed.2d 590 (1964); Brooks v. Missouri Pacific Railroad Co., 376 U. S. 182, 84 S.Ct. 578, 11 L.Ed.2d 599 (1964). Although both cases involved persons who were unquestionably employed before their induction into the armed forces, it is clear that the standards enunciated in those cases were not meant to be limited to situations in which a person was technically employed.

A policy towards the rendition of equity and fairness to returning veterans is inherent in the Tilton and Brooks decisions. Like the instant case, both cases involved situations in which the employee's qualification for seniority, as a matter of foresight, was subject to certain contingencies and uncertainties. Yet in those cases the Court rejected any rule predicated upon absolute foreseeability of advancement. It was held that if, as a matter of foresight, it was reasonably certain that promotion would

have occurred, then the complainant is entitled to restoration of his seniority rights. As the Court in Tilton aptly stated, 376 U.S. at p. 180, 84 S.Ct. at p. 602: "As Benjamin Franklin observed, 'In this world nothing is certain but death and taxes.'"

■ The focal point of the determination of whether a veteran is entitled to seniority is the degree of certainty of his attainment of such seniority, not the particular level of advancement or absolute security of employment according to the rules. This would seem to be confirmed by Brooks, 376 U.S. at p. 183, 84 S.Ct. at p. 579, the court states that:

"Petitioner brought suit in the District Court for the Eastern District of Arkansas. The court found, on the basis of adequate evidence, that 'in practice * * * discretion had no play * * *. Transition from the rank of apprentice to the rank of mechanic was automatic.'"

Defendant cites Fields v. Southern Ry. Co., D.C., 68 F.Supp. 801, for the proposition that a locomotive fireman who has completed his training but who has not performed as such is not an employee. Fields was decided prior to Tilton and Brooks and it deviates from the principles laid down in those cases. It placed great stress upon the fact that by the rules of the railroad and the Brotherhood neither the railroad nor the trainee were under any binding obligation until the trainee was called to perform services and he did so perform. This case would seem to reason from what was thought to be the law then—that a great deal of probability of promotion was necessary to establish seniority rights.

The court in Tilton, supra, takes a position which is diametrically opposed to the holding that a trainee who has completed his training but who has not yet been called does not qualify under the Act. The court states, 376 U.S. at p. 181, 84 S.Ct. at p. 602:

"A returning veteran cannot claim a promotion that depends solely upon satisfactory completion of a prerequisite period of employment training *unless he first works that period.*" (Emphasis added.)

Plaintiff established with substantial certainty that his seniority would have dated either from the date of his application or from the date he would have made his first paid trip but for his induction. Tilton, supra; Brooks, supra. In either event, it is probable that plaintiff would have been entitled to seniority ahead of the nine new men that were hired as he would have made a paid trip ahead of them.

■ The measure of damages is what the earnings were of another employee engaged in work in which the veteran should have been employed, less what the veteran had earned. Loeb v. Kivo, 2 Cir., 169 F.2d 346, cert. den. 355 U.S. 891, 69 S.Ct. 246, 93 L.Ed. 429 (1958). The employee, however, has a duty to mitigate damages and such amount earned by outside employment is applied to reduce the employer's liability. Loeb v. Kivo, supra; Boston & M. R. R. v. Bentubo, 160 F.2d 326 (1st Cir.); Fessler v. Reading Co., D.C., 138 F.Supp. 203; Dacey v. Bethlehem Steel Co., D.C., 66 F.Supp. 161.

■ This court is of the opinion that any loss attributable to the fact that the nine men were ahead of plaintiff in seniority is purely a matter of speculation or conjecture. If anything, plaintiff probably earned more than if he had seniority over the nine men hired in his absence. Defendant established that one of the nine men did not work during 1961, 1962, and 1963. One Metcalf earned only $3,002.00 in 1961, $217.00 in 1962, and did not work in 1963. One Smith, who had the status on the seniority scale that plaintiff would have had, earned $5,767.00 from the railroad in 1961. However, men with seniority can in some ways govern their own earnings and plaintiff testified that Smith could have earned more that year. Plaintiff's income for work for the railroad for that year was $250.14. Plaintiff testified as to 1962 that he would have worked more during the year if it had not been for his

lack of seniority. This was so according to plaintiff even though the three months that he "hardly worked" came at a slack time of year for the railroad. Smith earned $6,911.00 and plaintiff earned $4,587.00. Plaintiff testified that in 1963 he did not work steady during the first three months but that some of the nine did. He earned $7,401.89 from the railroad employment and Smith earned $6,554.00. Plaintiff testified that work was "on and off" in 1964 up until July 4 when his employment was terminated along with the rest of the firemen. Plaintiff introduced evidence of expenses not reimbursed by the railroad in mitigation of the amount of his gross income from railroad work but it is likely that the other nine men did not suffer the same or greater expenses.

■ Defendant introduced evidence that the total average income of the three highest of the nine men on the seniority list was $18,352.00 for the years of 1961, 1962, and 1963. Simons' total from railroad employment was $13,233.84 and his total plus extras from all employment for those three years was $19,630.00. Testimony established those three men could not have had outside employment without authorization by the railroad. In 1964, plaintiff earned $8,862.52 from railroad employment and $12,100.20 from all employment. It is apparent that plaintiff probably earned more than the three highest men on the seniority list of the nine men during the three years. Plaintiff is not entitled to more than he would have had if he had possessed his rightful seniority.

■ Plaintiff further claims that he would have had more severance pay if he had had his proper seniority and could have worked more. Such amount is speculation founded on speculation.

Plaintiff's right to restoration of seniority in actual employment with the railroad is moot as his employment was terminated on July 4, 1964.

Accordingly, it will be ordered that the Complaint be dismissed.

It is ordered that the foregoing shall constitute the Findings of Fact, Conclusions of Law, and Order for Judgment in this case. Rule 52(a) of the Federal Rules of Civil Procedure.