TEAMSTERS LOCAL UNION 612, Affiliated with the INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN & HELPERS OF AMERICA, Appellant,

v.

Marlon R. HELTON and Mercury Freight Lines, Inc., Appellees.

Marlon R. HELTON, Appellant,

v.

MERCURY FREIGHT LINES, INC., Appellee.

No. 26302.

United States Court of Appeals Fifth Circuit.

July 22, 1969.

Wells, Mullinax, Wells, Morris & Mauzy, Dallas, Tex., for appellant Teamsters Local Union 612, etc.

Alan S. Rosenthal, Dept. of Justice, Washington, D. C., Michael C. Farrar, Dept. of Justice, Morton Hollander, Chief Appellate Sec., Civ. Div., Dept. of Justice, Washington, D. C., William D. Ruckelshaus, Asst. Atty. Gen., Macon L. Weaver, U. S. Atty., Charles Nice, Asst. U. S. Atty., Birmingham, Ala., for appellant Helton.

William F. Gardner, Cabaniss, Johnston, Gardner & Clark, Drayton Scott, Birmingham, Ala., for appellee Mercury Freight.

Before TUTTLE and GEWIN, Circuit Judges, and COMISKEY, District Judge.

GEWIN, Circuit Judge:

Appellant Helton brought this suit in the United States District Court for the Northern District of Alabama, under the Universal Military Training and Service Act (now entitled the Military Selective Service Act of 1967) [1] against Mercury Freight Lines, Inc. seeking (1) reinstatement to an employment position held prior to military service and (2) re-

J. Scott Vowell, Beddow, Embry & Beddow, T. Eric Embry, James M. Fullan, Jr., Birmingham, Ala., L. N. D.

---

[1]. The pertinent part of the Military Training and Service Act, 50 U.S.C.App. § 459 provides:

(b) In the case of any such person who, in order to perform such training and service, has left or leaves a position * * * in the employ of any employer and who * * * makes application for reemployment within ninety days after he is relieved from such training and service * * *,

\* \* \* \* \*

(B) if such position was in the employ of a private employer, such person shall—

(i) if still qualified to perform the duties of such position, be restored by such employer or his successor in interest to such position or to a position of like seniority, status, and pay * * * * *

unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so;

\* \* \* \* \*

(c) (1) Any person who is restored to a position in accordance with the provisions of paragraph * * * (B)

of subsection (b) * * *, shall be considered as having been on furlough or leave of absence during his period of training and service in the armed forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration.

(2) It is declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of paragraph * * * (B) of subsection (b) * * *, should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment.

covery of the amount of wages lost because of the company's refusal to reinstate him. The company impleaded Teamsters Local 612 alleging that the union was responsible for any loss suffered by Helton. At the trial, the company contended that Helton should be reinstated as a log clerk; the union, on the other hand, argued that Helton should be reinstated as a dispatcher. The district court, sitting without a jury, held that Helton should be reinstated as a log clerk with seniority from the date of his original employment. However, the court disallowed recovery for loss of wages because it found (1) that the company had "fully complied with the rights to which the plaintiff was entitled" and (2) that the union had caused Helton's loss but had acted in good faith. The union appeals from the district court's determination that Helton should be reinstated as a log clerk and Helton appeals from the disallowance of recovery for lost wages. We have concluded that the lower court correctly ordered Helton's reinstatement as a log clerk but erred in disallowing recovery for his wage losses; accordingly, we affirm the judgment of the district court as to reinstatement and reverse and remand as to the matter of the recovery of lost compensation.

I

The pertinent background facts in this case are largely undisputed. Helton went to work for the company in 1959 in a job labeled as a *bill clerk*. In 1962, he was assigned to a position referred to as *dispatch clerk*[2] and was still performing that job on December 23, 1963 when he left the employ of the company for military service. In January 1966, after completing two years of military service, he promptly applied to the company for reinstatement to his pre-service position. In response to his application, the company informed him that his former job no longer existed but that he could have any clerical job to which his seniority, dating from 1959, would entitle him. While Helton had been in service, the company had eliminated the dispatch clerk job and allocated the duties of that position partially to bill and rate clerks and partially to a new position styled *dispatcher*.

Another innovation complicating Helton's situation was that the clerical employees had been organized by the Teamsters Union. As might well have been expected, when the company posted the seniority roster for the clerical unit showing Helton's seniority status, a number of employees filed grievances. In accordance with the collective bargaining agreement between the company and the union, the question of Helton's seniority was submitted to a grievance committee. After a hearing, the committee decided that Helton's seniority for purposes of job status and layoff should date from January 17, 1966 and that his seniority for purposes of fringe benefits should date from December 1959. Although the basis for the committee's decision is difficult to discern, the company acceded to the committee's decision and Helton thereafter filed this suit.

In the court below, Helton took a neutral position as to his status as a log clerk or a dispatcher; his concern was solely that he should receive the position to which his seniority entitles him. In this court, he contends that the district court properly classified him as a clerk. Since he is presently holding the job of bill clerk pursuant to the grievance committee's decision, he seeks to recover the difference between the wages and

2. One of the perplexities of this case is the necessity for using labels which may or may not accurately describe the position. The union contends that Helton was a "dispatcher" before entering military service; the district court, however, found that references to Helton's pre-service position as "night dispatcher" and "dispatcher" were merely "colloquial reflections of the fact that a part of the duties he performed consisted of dispatching * * *." Since we are concerned with the substance of Helton's pre-service position, the label dispute is neither helpful nor pertinent.

benefits he received as bill clerk and those he would have received as log clerk if his seniority had been recognized. Alternatively, if this court should determine that he should be classified as a dispatcher, Helton wants recovery in the amount of the difference between the wages and benefits received as a bill clerk and those he would have received as a dispatcher. In point of fact, the salary of the dispatcher is greater than the wages of either bill clerk or log clerk.

## II

The district court found that "if the salaried dispatcher job had been created while the plaintiff was actively employed, he would have been considered for the position but that he would not necessarily or automatically have been selected for it." The basis of this determination was the court's finding that the dispatcher position existing after Helton's return from the service was a more responsible position than the dispatch clerk job he had held. The clerical part of the dispatch clerk position—*viz.*, manifesting and billing—was allocated to clerks, while the more responsible part of the job, the actual dispatching, was allocated to the new dispatcher position. Moreover, the dispatch clerk position had been under the supervision of the regular line dispatcher, while the new dispatcher position was created to relieve the regular line dispatcher of both local and central dispatching duties.

■ Under the Act, a returning veteran is entitled, except in certain circumstances, to be reinstated to his preservice position or "to a position of like seniority, status, and pay." Moreover, he must be reinstated "in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment."[3] Under the "escalator principle" enunciated by these provisions, the returning veteran resumes his employment in a position which he would hold if he had not left for the service.[4] However, as the Supreme Court stated in McKinney v. Missouri-Kansas-Texas R.R.:

[A] veteran is not entitled to demand that he be assigned a position higher than that he formerly held when promotion to such a position depends, not simply on seniority or some other form of automatic progression, but on the exercise of discretion on the part of the employer.[5]

Subsequent to the *McKinney* case, the Court defined "automatic progression" as used in this context:

This requirement is met if, as a matter of foresight, it was reasonably certain that advancement would have occurred, and if, as a matter of hindsight, it did in fact occur.[6]

■ ■ As previously indicated, although the new dispatcher position is more responsible and more lucrative, Helton is perfectly satisfied with the district court's determination that he should be reinstated as a log clerk. The union, however, insists that he should be reinstated to the dispatcher position, arguing that the district court erred in determining that Helton would not have progressed automatically to that position. We cannot agree with this contention. On the record before this court, we cannot say that, as a matter of foresight, it was reasonably certain that Helton would have become the new dispatcher. Neither Helton nor the company nor the district court thinks

3. See note 1 *supra* for these statutory provisions.

4. *See* Tilton v. Missouri Pac. R.R., 376 U.S. 169, 181, 84 S.Ct. 595, 11 L.Ed.2d 590, 597 (1964).

5. 357 U.S. 265, 272, 78 S.Ct. 1222, 1227, 2 L.Ed.2d 1305, 1311 (1958).

6. Tilton v. Missouri Pac. R.R., 376 U.S. 169, 181, 84 S.Ct. 595, 602, 11 L.Ed.2d 590, 597 (1964).

that the promotion was reasonably certain. We do not think so either.[7]

 It may be observed that there appears to be some confusion in this case as to the precise issue to be determined. Counsel for the union expressed the view in the court below that the issue was whether or not Helton's pre-service position was "supervisory." In support of its contention that Helton should not be reinstated as a clerk, the union relies upon the fact that both it and the company had agreed in certification proceedings before the National Labor Relations Board that the dispatcher position was supervisory and not includible within the bargaining unit. There are two difficulties with this contention. First, it is a bootstrap argument because it necessarily assumes that, for present purposes, the dispatch clerk job and the new dispatcher position were the same. And second, while we certainly agree that the duties of the pre-service job are very pertinent to determining which post-service position is the same or of like seniority, status and pay, the fact that the veteran was a supervisory or a nonsupervisory employee for purposes of the National Labor Relations Act is not in itself relevant to determining the proper position in which to reinstate a veteran. The injection of NLRA concepts into the context of a veteran's claim for reinstatement adds little other than confusion. The proper approach in these cases is to adduce evidence (1) as to the duties and responsibilities of the veteran's pre-service position and of the post-service positions to which he arguably might be reinstated, and (2) as to the likelihood that the veteran would have attained any given position by automatic progression.

### III

Although the district court awarded Helton his proper seniority status, it denied any recovery for his lost wages during the period he occupied a lesser position. Implicitly holding that it had complete discretion to award damages or not, the court decided to permit no monetary recovery because, in its view, the company here had been wholly faultless and the union, though at fault, had been in good faith. We do not agree with this assessment of the situation.

The relevant part of subsection 459(d) states:

In case any private employer fails or refuses to comply with the provisions of subsection (b) [or] subsection (c) (1), * * * the district court of the United States for the district in which such private employer maintains a place of business shall have power, upon the filing of a motion, petition, or other appropriate pleadings by the person entitled to the benefits of such provisions, specifically to require such employer to comply with such provisions and to compensate such person for any loss of wages or benefits suffered by reason of such employer's unlawful action * * * *[8].

Several courts have held that the language of this section—"shall have power * * * to compensate such person"—places the matter of monetary recovery within the discretion of the district court.[9] Indeed, this court has uttered a rather furtive dictum implying that the district court has discretion in this

---

7. The union makes an argument that the findings of the district court should not be reviewed against a "clearly erroneous" standard, Fed.R.Civ.P. 52(a), because the trial court stated his view of the evidence before the union put on its witnesses. We disagree. In a non-jury trial, there is no reason whatever why the trial judge should sit inscrutably silent; indeed, the expression of tentative impressions should provide valuable guidance to counsel. We agree with the district court's tentative as well as its final conclusion.

8. 50 U.S.C.App. § 459(d).

9. Levine v. Berman, 178 F.2d 440, 445 (7th Cir. 1949); John S. Doane Co. v. Martin, 164 F.2d 537, 541 (1st Cir. 1947); Boston & M. R.R. v. Bentubo, 160 F.2d 326, 329 (1st Cir. 1947).

area.[10] However, like the Third Circuit in Van Doren v. Van Doren Laundry Service, Inc.,[11] while we are not free from doubt concerning the nature and extent of the district court's discretion to deny recovery of loss, we think the court committed error in refusing damages in this case.

█ It simply cannot be maintained that the company complied fully with the statute in this case. Since it did not reinstate Helton with proper seniority—but instead acceded to the demands of the union—the company cannot claim compliance. The only way to comply with the statute was to reinstate the veteran with his seniority. We have no doubt that all parties acted in good faith. However, both the company and the union acted in their own interest to the detriment of the veteran. The company was obviously interested in maintaining good labor relations; the union was obviously interested in maintaining good labor relations; the union was obviously attempting to protect its members' seniority status. Both reasons evince perfect legitimacy and good faith. However, the fact remains that amidst all this legitimacy and good faith, Helton suffered losses which Congress has said he shall not suffer. There can be no doubt that Helton acted properly in every respect and that his losses were in no sense caused by him. The company has cited no case in which a wholly innocent veteran was denied recovery for losses. In all the cases we have discovered, the denial of recovery for actual losses was based upon wrongdoing on the veteran's part. Therefore, we hold that, even if the matter of monetary recovery was within the court's discretion, the denial of recovery in this case was an abuse of discretion.

## IV

█ In an attempt to limit the amount of Helton's recovery, the company also contends that a veteran can recover losses only for the period beginning after the date on which suit is commenced. Although this question is not directly before this court, we deal with it in the interest of judicial expediency.[12]

Although two district court cases have endorsed the rather arbitrary rule urged by the company,[13] we reject it outright. To hold that a veteran cannot recover for lost wages prior to filing suit would encourage immediate recourse to the courts instead of negotiation and settlement. Moreover, a primary policy of the statute involved here is expeditious restoration of veterans; if nothing were lost until suit was filed, there would be no encouragement to companies to act promptly in reinstating veterans. It is true that Helton filed suit a year after the grievance committee's decision. However, it is clear that he did file a complaint with the Bureau of Veteran's Reemployment Rights in the Department of Labor very promptly after proper reinstatement was refused. Since this suit was brought by the Department of Justice on behalf of the veteran, it seems quite likely that the Bureau turned this matter over to the Justice Department after negotiation failed. Moreover, the company was perfectly well aware that Helton was being denied the seniority due him. Therefore, in the circumstances of this case, the veteran is entitled to recover the full amount of wages and benefits lost because of the unlawful refusal to reinstate him with proper seniority.

As to reinstatement, the judgment of the district court is affirmed; as to re-

10. Special Serv. Co. v. Delaney, 172 F.2d 16, 20 (5th Cir. 1949).

11. 162 F.2d 1007, 1010–1011 (3d Cir. 1947).

12. See SEC v. National Securities, Inc., 393 U.S. 453, 463, 89 S.Ct. 564, 570, 21 L.Ed.2d 668, 678–679 (1969). Miller v. International Paper Co., 408 F.2d 283, 288–289 (5th Cir. 1969).

13. Noble v. International Nickel Corp., 77 F.Supp. 352 (S.D.W.Va.1948); Kay v. General Cable Corp., 59 F.Supp. 358 (D. N.J.1945).

covery of lost wages and benefits, the judgment is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

Affirmed in part; reversed and remanded in part.