Lee M. TAYLOR, Plaintiff,

v.

SOUTHERN PACIFIC COMPANY, Defendant.

Civ. No. 47289.

United States District Court
N. D. California.

Dec. 19, 1969.

Cecil F. Poole, U. S. Atty., and Steven Kazan, Asst. U. S. Atty., San Francisco, Cal., for plaintiff.

William R. Denton, San Francisco, Cal., for defendant.

## OPINION AND DECISION

GERALD S. LEVIN, District Judge.

This case is brought under the provisions of Section 9 of the Universal Military Training and Service Act, as amended (50 U.S.C.A. App. § 459)[1] [hereinafter "the Act"]. Jurisdiction is conferred upon this Court by Section 9(b) of the Act.

The facts of this case appear in an agreed pretrial order dated January 24, 1969. To summarize briefly, Plaintiff Taylor [hereinafter "Taylor"] was initi-

---

1. The portions of the Act pertinent herein read as follows:

(b) *Reemployment rights*

In the case of any such person who, in order to perform such training and service, has left or leaves a position (other than a temporary position) in the employ of any employer and who (1) receives such certificate, and (2) makes application for reemployment within ninety days after he is relieved from such training and service or from hospitalization continuing after discharge for a period of not more than one year—

\*    \*    \*    \*    \*    \*

(B) if such position was in the employ of a private employer, such person shall—

    (i) if still qualified to perform the duties of such position, be restored by such employer or his successor in interest to such position or to a position of like seniority, status, and pay; or
    (ii) if not qualified to perform the duties of such position by reason of disability sustained during such service but qualified to perform the duties of any other position in the employ of such employer or his successor in interest, be restored by such employer or his successor in interest to such other position the duties of which he is qualified to perform as will provide him like seniority, status, and pay, or the nearest approximation thereof consistent with the circumstances in his case,

unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so;

\*    \*    \*    \*    \*    \*

(c) *Service considered as furlough or leave of absence*

    (1) Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] shall be considered as having been on furlough or leave of absence during his period of training and service in the armed forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration.
    (2) It is declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment.

\*    \*    \*    \*    \*    \*

ally employed by Defendant Southern Pacific Company [hereinafter "Southern Pacific"] on July 19, 1961, in the "other than temporary" position of locomotive fireman. Taylor left such position to enter the United States Armed Forces on July 13, 1964. Taylor completed his military service, received a certificate evidencing satisfactory service, and was separated on July 12, 1966. He then made a timely application for reinstatement on August 30, 1966, and requested severance pay in lieu of re-employment as a locomotive fireman.

Southern Pacific refused to grant Taylor the requested severance pay, but offered instead to reinstate him as a locomotive fireman. Taylor refused such offer.

Taylor did not report to work in order to be reinstated as a locomotive fireman, nor did he "rewrite the book of rules" as requested by Southern Pacific, but he steadfastly insisted on his right to severance pay in lieu of reinstatement. Taylor did, in addition, take the physical examination as required by Southern Pacific and was found physically fit to return to work in his pre-service position.

Pursuant to the agreement reached between the parties in the pre-trial order, the sole issues to be determined are as follows:

(1) Whether or not Taylor met all the requirements for reemployment under the Act;

(2) Whether or not Southern Pacific must grant severance pay to Taylor.

Southern Pacific argues that because Taylor refused to accept reemployment (and follow certain of the procedures with regard thereto as required by Southern Pacific), he was not "restored" within the meaning of the Act and hence cannot avail himself of its benefits. Southern Pacific argues further that Taylor is not entitled to severance pay but only to reemployment, since the Act says nothing about the granting of severance pay and that, in any event, the Arbitration Award[2] [hereinafter "Award"] which sanctioned such severance pay lapsed prior to Taylor's request for the severance pay.

None of Southern Pacific's contentions are well taken in the light of the liberality with which courts have interpreted the Act. While there is much case law interpreting the Act and the like provisions of a predecessor statute,[3] most of it has been directed at problems of definition under the Act. However, the clear purport of these cases and of the few cases which have discussed the returning veteran's right to severance pay under similar conditions (discussed below) lead to the conclusion that Taylor is entitled to the severance pay he seeks here.

Typical language concerning construction and application of provisions relating to veterans' reemployment rights can be found in the first major Supreme Court case on the subject, Fishgold v. Sullivan Drydock & Repair Corp., 328 U. S. 275, 285, 66 S.Ct. 1105, 1111, 90 L.Ed. 1230 (1946):

This legislation is to be liberally construed for the benefit of those who left private life to serve their country in its hour of great need. See Boone v. Lightner, 319 U.S. 561, 575 [63 S. Ct. 1223, 1231, 87 L.Ed. 1587]. And

---

2. Arbitration Award 282, the provision under which Taylor claims he is entitled to severance pay, was issued on November 26, 1963, pursuant to action taken by an Arbitration Board (No. 282). The Arbitration Board had been created and convened following a dispute between certain railroads and organizations of railroad employees over the desire of the former to eliminate certain railroad firemen and to reduce the size of train crews. The Award provided, *inter alia*, that firemen in Taylor's seniority group (C-6) had the option of accepting a comparable position or severance pay. A far more detailed history of the events leading up to the Award and of the effect of the Award itself can be found in Brotherhood of Railroad Trainmen v. Akron & B. B. R. Co., 128 U.S.App.D.C. 59, 385 F.2d 581, 588 et seq. (1967) cert. den. 390 U.S. 923, 88 S.Ct. 851, 19 L.Ed.2d 983 (1968).

3. Selective Training and Service Act of 1940, 50 U.S.C. App. § 301.

no practice of employers or agreements between employers and unions can cut down the service adjustment benefits which Congress has secured the veteran under the Act. Our problem is to construe the separate provisions of the Act as parts of an organic whole and give each as liberal a construction for the benefit of the veteran as a harmonious interplay of the separate provisions permits.

■ Thus both the letter and the spirit of the Act indicate that Taylor did in fact "meet all the requirements for reemployment" as required by the Act. The mere failure to comply fully with company regulations should not be determinative, lest private employers thwart the clear purpose of the Act by imposing their own superfluous requirements to the determination of acceptability for reinstatement as required by the Act.

To have required Taylor to take additional procedural steps, not essential to his reinstatement, would have been wasteful in the instant case; Taylor's avowed purpose from the outset was to secure severance pay, not reemployment. We note that had Taylor gone through the perfunctory steps of accepting reemployment, even for the briefest of periods, this case would not be before us. Since nothing in the record indicates that Taylor was in any way disqualified for reemployment, his failure to begin work again is an illusory ground on which to deny him benefits secured by the Act.

Assuming Taylor met all the requirements for reemployment under the Act, is he then entitled to severance pay pursuant to the Award and in lieu of reinstatement?

Southern Pacific contends that the life of the Award was only two years, with its coverage ending prior to Taylor's application for reinstatement and thus not providing for the grant of severance pay in his case. Southern Pacific cities for this proposition *Brotherhood of Railroad Trainmen, supra,* but that case does not support Southern Pacific's position. It did not deal with the applicability of Section 9(b) of the Act, nor with the problem of reinstatement of veterans at all, but rather with the status of railroad work rules in the light of the two-year life of the Award. There was no intimation that this two-year life would affect the rights of a returning serviceman which had accrued thereunder. The gist of the court's opinion was as follows (385 F.2d at 593):

> We think the mere limitation of the effective period of the Award neither implies nor compels the construction the unions seek. Our ruling is that the work rules created by the Award constituted a new plateau that was not automatically eroded when the Award expired.

We note, too, not only the liberality with which the terms of the Act have been interpreted, but also the mandate of Congress in passing the Act. As the Court said in *Fishgold, supra,* at 284–286, 66 S.Ct. at 1110–1111,

> The Act [See Footnote 3., *supra*] was designed to protect the veteran in several ways. He who was called to the colors was not to be penalized on his return by reason of his absence from his civilian job. * * *
>
> Thus he does not step back on the seniority escalator at the point he stepped off. He steps back on at the precise point he would have occupied had he kept his position continuously during the war. * * *
>
> We agree * * * that by these provisions Congress made the restoration as nearly a complete substitute for the original job as was possible.

The "escalator principle" was reaffirmed by the Court in Trailmobile Co. v. Whirls, 331 U.S. 40, 57, 67 S.Ct. 982, 91 L.Ed. 1328 (1947) and restated in Oakley v. Louisville & Nashville R. Co., 338 U.S. 278, 283, 70 S.Ct. 119, 94 L.Ed. 87 (1949). Congress expressly approved the "escalator principle" by embodying it in § 9 (c) (2) of the Act, *supra.* Tilton v. Missouri P. R. Co., 376 U.S. 169, 175, 84 S. Ct. 595, 11 L.Ed.2d 590 (1964).

The crux of this principle was the Congressional belief that the returning veteran is not to be penalized by reason of his absence from civilian employment. See Accardi v. Pennsylvania R. Co., 383 U.S. 225, 228–229, 86 S.Ct. 768, 15 L.Ed.2d 717 (1966); *Tilton, supra,* 376 U.S. at 171, 84 S.Ct. 595; *Fishgold, supra,* 328 U.S. at 284, 66 S.Ct. 1105. *Accardi* is the pronouncement of the Supreme Court most persuasive here. The Court in *Accardi* held that the plaintiff veterans who returned to their civilian employment as tugboat firemen were entitled to credit for time spent in the service in computing amounts to be received by them under a strike settlement agreement permitting lay-offs if accompanied by severance pay. The Court concluded (383 U.S. 229–230, 86 S.Ct. 771), that the intention of Congress in passing the Act,

> [W]as to preserve for the returning veterans the rights and benefits which would have *automatically* accrued to them had they remained in private employment rather than responding to the call of their country. (Emphasis added)

If Taylor had remained in his civilian employment "rather than responding to the call of his country" he would have *automatically* qualified to receive severance pay if he had so opted.[4] To deny Taylor that choice now would be to penalize him by the very fact of service for his country. The "escalator principle" can mean only this: the escalator had steps both up (continued employment and possible promotion), and out (discharge in exchange for severance pay) when Taylor first set foot upon it with his initial employment. When he returned to the escalator, it was impermissible for Southern Pacific to restruc-

ture it so as to leave him only the steps up, and remove those leading out.

Besides *Accardi*, the lower court opinions on the subject do not preclude the possibility of giving severance pay as one of the incidents of reinstatement protected by the Act. See Seattle Star v. Randolph, 168 F.2d 274, 275–276 (9th Cir. 1948) (noting severance pay could be granted upon request for reinstatement by veteran, but refusing to count time in armed forces towards its computation because agreement providing for severance not reached until after veteran's return); Simons v. Chicago Great Western Railway Company, 262 F.Supp. 334, 337 (N.D. Iowa 1966) (severance pay not granted, but only because amount too speculative). The court noted: "A policy towards the rendition of equity and fairness to returning veterans is inherent in the *Tilton* and *Brooks*[5] decisions." (262 F.Supp. at 335).

The case nearest in point was not cited by either party herein: Hire v. E. I. DuPont De Nemours & Co., 211 F.Supp. 164 (M.D.Tenn.1962) rev'd. on other grounds 324 F.2d 546 (6th Cir. 1963). The plaintiff there had worked for DuPont and then gone into the armed forces. While in the armed forces, an agreement such as that in the present case was entered into, by which severance pay could be granted those laid off. Upon his application for reinstatement after returning from the armed forces, the plaintiff was placed on the recall list (of those laid off) and thereupon requested severance pay instead. The court framed the main issue as follows:

> [W]hether a veteran is entitled under the Act to layoff benefits created by a labor agreement negotiated during his military service when he is placed on

---

4. This fact is not in contention. Paragraph 10 of the Agreed Pre-Trial Order recites,

   \*　　\*　　\*　　\*　　\*　　\*

   If plaintiff had remained in the employ of defendant rather than serving on the armed forces from July 13, 1964, through July 12, 1966, he would have been given an option under Arbitration Award 282

of accepting severance pay or accepting a comparable other position with defendant.

5. Tilton v. Missouri P. R. Co., *supra*; Brooks v. Missouri Pacific Railroad Co., 376 U.S. 182, 84 S.Ct. 578, 11 L.Ed.2d 599 (1964).

layoff status immediately upon returning from the service without an intervening period of active employment. 211 F.Supp. 166.

The court answered in the affirmative: "The plaintiff was 'restored' by being placed in his proper position on the recall list." *Id.*

The case was reversed on other grounds on appeal, the Court of Appeals for the 6th Circuit determining that the relevant statute of limitations in force in Tennessee should have been applied so as to defeat the plaintiff's claim. The Court of Appeals did not, however, quarrel with the result on the merits as reached by the lower court. The court said, "We agree with the District Judge in concluding that active service was not necessary to entitle plaintiff to severance pay. * * * Active service was not a prerequisite to the severance benefit." 324 F.2d at 550.

Although the facts in the present case are not precisely the same as those in the *Hire* case, ours is arguably an easier case because there is no question of the applicability of a later-reached agreement to the rights of a returning veteran; the Award which provided for severance pay here was in effect before Taylor even left for the service.

The principal cases cited by Southern Pacific, McKinney v. Missouri-K.-T. R. Co., 357 U.S. 265, 78 S.Ct. 1222, 2 L.Ed. 2d 1305 (1958) and Leo A. Wood v. Southern Pacific Co., [Findings of Fact and Conclusions of Law, No. 67-932-PH (C.D. Cal. Oct. 28, 1969)] are not in point here and do not call for a contrary result on any of the issues discussed above.

Although the Court in *McKinney* indicated that it was not the purpose of the Act to give to the returning veteran "perfect reproduction of the civilian employment" he had previously enjoyed, this was in the context of a veteran seeking a higher position than that which he had left. In deciding against the veteran, the Court held only that the Act did not guarantee advancement which was discretionary as against advancement accruing as of right.[6] As discussed above, there was no element of discretion in granting Taylor severance pay if he opted to receive it under the facts of the present case; Taylor's option was a benefit automatically accruing to him.

Southern Pacific also cites the recently-decided case of Leo A. Wood v. Southern Pacific Co., *supra.* That case does not support the position of Southern Pacific. The issue there was whether a returning veteran was entitled to reemployment as a switchman, although he had left for the service after working in the lower position of a fireman. The court found that such discretionary promotion was not required under the Act,[7] but it did not upset the granting of severance pay to the veteran upon his termination[8] and thus impliedly sanctioned the granting of same.

Therefore, the above-discussed issues being resolved in favor of Taylor, it is ordered that judgment is hereby granted in his favor for the stipulated amount of the severance pay in the sum of $4,107.75.

This opinion shall constitute the findings of fact and conclusions of law required by Rule 52(a) of the Federal Rules of Civil Procedure.

6. See *Tilton, supra,* 376 U.S. at 179–180, 84 S.Ct. 595. Montgomery v. Southern Electric Steel Company, 410 F.2d 611, 614 (5th Cir. 1969); Collins v. Weirton Steel Company, 398 F.2d 305, 309 (4th Cir. 1968); Power v. Northern Illinois Gas Company, 388 F.2d 427, 428–429 (7th Cir. 1968); Witty v. Louisville and Nashville Railroad Company, 342 F.2d 614, 616 (7th Cir. 1965); McNichols v. Southern Railway Company, 194 F.Supp. 148, 150–151 (E.D.Ky.1961).

7. In fact, switchman was not even a job to which a fireman could be promoted. Finding of Fact No. 5. See also Finding of Fact No. 12.

8. Upon his termination, plaintiff was paid by defendant a gross severance allowance of $6,990.53. Finding of Fact No. 9. See also Finding of Fact No. 12 and Conclusion of Law Nos. 7 and 8.