444 F.2d 365
 Marlon R. HELTON, Plaintiff-Appellant,
v.
MERCURY FREIGHT LINES, INC., Defendant-Third-Party Plaintiff-Appellee,
v.
TEAMSTERS LOCAL UNION 612, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Third-Party Defendant-Appellee.
 No. 30109.
 United States Court of Appeals, Fifth Circuit.
 May 19, 1971.
 
 Wayman G. Sherrer, U. S. Atty., Birmingham, Ala., George Palmer, U. S. Dept. of Labor, Birmingham, Ala., Alan S. Rosenthal, Michael C. Farrar, William D. Ruckelshaus, Asst. Atty. Gen., Washington, D. C., for plaintiff-appellant.
 William Gardner, Birmingham, Ala., for Mercury Freight Lines.
 T. Eric Embry, Birmingham, Ala., for Local Union 612.
 Before WISDOM and GOLDBERG, Circuit Judges, and DAVIS,* Judge.
 DAVIS, Judge:
 
 
 1
 This is a sequel to Teamsters Local Union 612 v. Helton, 413 F.2d 1380 (1969), in which this court held that plaintiff-appellant Helton, a veteran formerly employed and then rehired by Mercury Freight Lines, Inc., was entitled under the reinstatement provisions of the Universal Military Training and Service Act, 50 U.S.C. App. § 459 (now the Military Selective Service Act of 1967) to placement by his employer in the better job of "log clerk", rather than the lower-paying "bill clerk" position he was given on his return from the service.[1] In addition to affirming the district court's conclusion to this effect (see 413 F.2d at 1383-1384), we reversed that court's refusal to award damages.[2] We said that "in the circumstances of this case, the veteran is entitled to recover the full amount of wages and benefits lost because of the unlawful refusal to reinstate him with proper seniority." 413 F.2d at 1385.
 
 
 2
 On remand, the evidence showed that Helton's earnings as bill clerk (from January 17, 1966, when he was reemployed, to March 9, 1968, when the company complied with the order to give him the log clerk job) were substantially less per hour than earned by the man who was the log clerk during that period. Based on the normal workweek, this difference totaled over $2,500. The log clerk had, however, worked only a small amount of overtime during this 111-week span, while Helton had voluntarily worked more than 626 overtime hours as bill clerk. The difference between his total pay and the log clerk's total earnings was only some $716.31, and despite plaintiff's objection the district court gave him an award for no more than this sum, plus interest. He appeals, claiming the right to the difference between the straight-time earnings of the two jobs, without reduction for the overtime wages.
 
 
 3
 The general words of the statute do not answer this question specifically. They say only (50 U.S.C. § 459(d)) that the court shall have power to require the employer "to compensate such person [the employee] for any loss of wages or benefits suffered by reason of such employer's unlawful action. * * *." But we think that the principle underlying this remedial payment ordered by Congress — "compensation" for "any" loss of wages or benefits — requires us to accept appellant's contention.
 
 
 4
 The rule of full compensation has sometimes been formulated as giving the veteran the difference between the earnings he would have had in the slot in which he should have been reemployed and what he actually earned in the lesser job. See Loeb v. Kivo, 169 F.2d 346, 351 (C.A. 2, 1948), cert. denied 335 U.S. 891, 69 S.Ct. 246, 93 L.Ed. 429 (1948); Simons v. Chicago Great Western Ry., 262 F.Supp. 334, 336 (N.D.Iowa 1966); Hood v. Lawrence, 138 F.Supp. 120, 122 (D.N.H.1955); Armstrong v. Tennessee Coal, Iron & R. Co., 73 F.Supp. 329, 332 (N.D.Ala.1947). The company cites these cases as literally supporting the decision below, but none of them involved the problem we have here, or was called upon to phrase the rule in the context of an employee's putting in considerable overtime in the lower-paid position. A more inclusive formulation, drawn from the legislation's overall purpose, is that the veteran should be made whole, and reimbursed for the measurable wage disadvantage or loss suffered through his incorrect reinstatement. Cf. Accardi v. Pennsylvania R. R., 383 U.S. 225, 228, 86 S.Ct. 768, 771, 15 L. Ed.2d 717, 720 (1966); Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 284, 285, 66 S.Ct. 1105, 1110-1111, 90 L.Ed. 1230, 1240 (1946). The specific application of that principle to the situation before us would be that he should not have had to work longer hours at the lower pay in order to earn the amount of salary he would have had at the superior grade — and is entitled to monetary compensation for that deprivation.
 
 
 5
 If Mercury Freight Lines had forced Helton to work so much overtime as bill clerk that he made the same sum as he would have earned as log clerk, it would be unjust, and the reverse of fair compensation under the statute, to say that therefore the employer owed him nothing at all as a result of its unlawful action in reemploying him at the lower grade. He would clearly have been disadvantaged by being required to labor longer for the same monetary return. Appellee says that the distinction here is that appellant chose to work overtime and could have declined if he wished. Nevertheless the fact is that, if Helton desired to approach the same sum he would have had as long clerk, he had to work more hours, i. e. accept his overtime assignments. In doing so, he necessarily gave up what would otherwise be leisure time or hours he could devote to other pursuits. Even though his total pay was almost as much as he would have received in the other post, he was significantly disadvantaged, in this way, by receiving a lesser straight-time rate as bill clerk. The overtime pay represents, not a "windfall" to him, but compensation for those added hours of work.
 
 
 6
 On the other hand, the company which accrues an unmerited advantage from the decision below, will not be treated unfairly if appellant prevails. Under the district court's view, the employer will pay little or nothing for the improperly reinstated employee's 600 hours of extra overtime work, although it accepted the fruits of that effort.[3] If appellant retains his pay for these overtime hours, the company, it is true, will have to pay out more to him, in total earnings and damages, than if he had been correctly reinstated in the first place. But there is no injustice in this result since the employer will also have received the additional overtime work for which it is paying. Moreover, if Helton had not performed this extra labor it would have been done by someone else (another bill clerk) whom the employer would have compensated. Thus, with regard to this overtime work, the company is paying only for what it received and for an expense it would have incurred anyway. There is, in a word, no penalty in requiring it to give Helton both the log clerk's pay and his overtime as a bill clerk.
 
 
 7
 The only previous judicial discussion of this sector of veteran-reinstatement law supports appellant. MacKnight v. Twin Cities Broadcasting Corp., 13 CCH Labor Cases ¶ 64,067 (D.Minn.1947). That ex-serviceman, denied his reemployment rights, worked for another employer for a regular 40-hour week during the day, and also worked nine hours part-time at night for still another employer. Deducting his regular day-time wages, the court refused to include his night-time earnings in the subtraction. "The equitable principle of mitigation does not imply that a wrongfully discharged veteran should be required to work a forty-nine hour week in order to lessen the damages to his employer for whom he worked on a forty hour a week basis. The duty which rests upon the discharged veteran to mitigate damages is fulfilled when he makes a bona fide effort to obtain employment upon substantially the same hourly basis as that which governed his employment with his former employer". And, again, "a discharged veteran with unusual ambition might put in eighty hours a week. But, generally speaking, it would be manifestly inequitable to credit a forty hour a week employer with wages earned by the discharged employee on an eighty hour a week basis." Though MacKnight happened to deal with extra work for another employer, the rationale of the holding, with which we agree, cannot be squared with the decision below. Likewise opposed to the district court's position are the Department of Labor's Bureau of Veterans' Reemployment Rights' Legal Guide and Case Digest, pp. 1007, 1014-1015, and the Department's Veterans Reemployment Rights Handbook (1970), p. 135.[4]
 
 
 8
 We conclude, for these reasons, that the judgment below must be modified to allow appellant to recover the difference between the pay he would have made during the normal workweek as log clerk and the normal workweek pay of the bill clerk, without any deduction for the overtime pay he earned in the latter job, plus interest as already decreed by the district court.[5]
 
 
 9
 There remains only to add that the company and the Union should contribute to these additional damages in the same ratio as the district court ordered in its judgment now being modified — one-half to be paid by each. Neither of those parties has appealed from that allocation,[6] and it is still appropriate for the increased damages.
 
 
 10
 Reversed and remanded.
 
 
 
 Notes:
 
 
 *
 Honorable Oscar H. Davis, U. S. Court of Claims, Washington, D. C., sitting by designation
 
 
 [1]
 The controversy was tri-partite, involving the veteran, the employer, and the union. The latter fought against giving appellant the log clerk job, claiming that, if entitled to a higher job, he should have been made a "dispatcher" (classified as a salaried, not a wage, position). On its own, the company was willing to reinstate him as log clerk, but it acceded to the union's pressure to the extent of refusing him the log clerk position and keeping him at bill-clerk level
 
 
 [2]
 "Although the district court awarded Helton his proper seniority status, it denied any recovery for his lost wages during the period he occupied a lesser position * * * because, in its view, the company here had been wholly faultless and the union, though at fault, had been in good faith." 413 F.2d at 1384
 
 
 [3]
 Had Helton worked two more overtime hours per week as bill clerk, his employer would not even have had to pay the $700 awarded below, despite the more than 800 hours of additional work he would have performed and his employer enjoyed. The result would be that in the end Mercury Freight Lines would pay the same amount to Helton as if he had not worked overtime at all, and had simply collected in damages the difference between straight log clerk wages and bill clerk pay. The company would in effect be paying nothing for the overtime work he did
 
 
 [4]
 Appellee contends that theLegal Guide sustains its view, but we think that a reading of all the applicable portions demonstrates the contrary. Neither the Legal Guide nor the Handbook has the status of interpretative regulations, but they do have a measure of weight. Cf. Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944).
 
 
 [5]
 We do not set forth exact figures because appellant indicates that there may be minor discrepancies in the figures appearing in the findings of the court below
 
 
 [6]
 The union, on this appeal, continues to argue, somewhat faintly, that Helton should not be reinstated as log clerk, but that point was settled by our earlier decision and is no longer open