**Christopher DYER, Appellant,**

v.

**HINKY DINKY, INC., Appellee.**

**No. 82–1805.**

United States Court of Appeals, Eighth Circuit.

Submitted March 17, 1983.

Decided July 5, 1983.

Robert E. Kopp, U.S. Dept. of Justice, Washington, D.C., Tedrick A. Housh, Jr., Regional Sol., Kansas City, Mo., T. Timothy Ryan, Jr., Sol. of Labor, John F. Depenbrock, Associate Sol., Susan M. Webman, Atty., U.S. Dept. of Labor, Washington, D.C., for appellant.

George C. Rozmarin, Swarr, May, Smith, Andersen & Jensen, Omaha, Neb., for appellee.

Before BRIGHT and JOHN R. GIBSON, Circuit Judges, and HANSON,* Senior District Judge.

JOHN R. GIBSON, Circuit Judge.

The sole issue in this appeal is the proper method of calculating backpay under § 2022 of the Vietnam Era Veterans' Readjustment Assistance Act of 1974, 38 U.S.C. § 2021 *et seq.* ("Veterans' Act" or "Act"). The employer, Hinky Dinky, Inc., concedes that it gave its employee, Christopher Dyer, an improper seniority date which resulted in lost wages and vacation pay for the period immediately following Dyer's discharge from military service. Hinky Dinky later promoted Dyer to service manager. The district court compared his higher earnings as service manager with what he would have earned on the old job with the proper seniority date. As the difference exceeded the lost wages and vacation pay claimed by Dyer, it concluded that Dyer had suffered no actual loss. We reverse.

Dyer was initially hired by Hinky Dinky on February 28, 1974 as a courtesy clerk in Hinky Dinky's store in Sioux Falls, South Dakota. He worked in a part-time capacity from June 10, 1974 until June 6, 1975, when he left to enter military service. He served in the United States Marine Corps from July 31, 1975 until July 30, 1979, when he was honorably discharged. Dyer was reemployed by Hinky Dinky in a full-time capacity on August 13, 1979. He was credited for only twelve months of full-time service and consequently was given a seniority date of August 13, 1978. He was paid according to the appropriate rate provided for in the union contract for employees with that seniority date. On January 21, 1980, Dyer was downgraded to part-time status due to economic conditions.

The parties agree that Dyer was given the wrong seniority date upon his reemployment. The correct date should have been May 9, 1976. They further agree that Dyer would not have been downgraded to part-time status had he been given the correct seniority date. On March 24, 1980, due to the incorrect seniority date, Dyer was in line to be laid off, but instead was promoted to service manager at the Fremont, Nebraska store at a higher rate of pay.

On August 23, 1981, the position of service manager in Fremont was abolished. At that time, Hinky Dinky finally adjusted Dyer's seniority date to the correct date of May 9, 1976 and Dyer returned to work for Hinky Dinky in Sioux Falls.

Because of the wrong seniority date, Dyer lost wages in the amount of $2,145.60 for the period from his reemployment on August 13, 1979 to March 24, 1980, the date

---

* The Honorable William C. Hanson, Senior Judge, United States District Court for the Northern and Southern Districts of Iowa, sitting by designation.

he accepted the offer to work in Fremont. Dyer also lost fifteen hours of vacation pay and was therefore due an additional $103.50, for a total of $2,249.10. The parties agree that if Dyer had had a full-time position with proper seniority in Sioux Falls for the period March 24, 1980 to August 24, 1981, he would have earned gross wages in the amount of $21,478.00. For that same period, while working in Fremont, Dyer actually earned $26,952.80.

On cross-motions for summary judgment, the district court found for Hinky Dinky, holding that Dyer's earnings at the higher rate of pay were $5,474.80 more than he would have received had he been given the proper seniority date, and as this amount exceeded the amount of lost wages and vacation pay, Dyer was not entitled to recover.

■ Section 2021 of the Veterans' Act provides that any person who, as a consequence of being inducted into the United States Armed Forces, must leave a permanent position of employment, has a right to be reinstated in his former position, "or to a position of like seniority, status, and pay[,]" upon his return. 38 U.S.C. § 2021. The purpose of the Act is to insure that no veteran is penalized by reason of his absence from his civilian job. In *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946), the Supreme Court explained:

> [The veteran] does not step back on the seniority escalator at the point he stepped off. He steps back on at the precise point he would have occupied had he kept his position continuously during the war.... He acquires not only the same seniority he had; his service in the armed services is counted as service in the plant so that he does not lose ground by reason of his absence.

*Id.* at 284–85, 66 S.Ct. at 1110–11. An employer who violates the Act by failing to reinstate the veteran in his "escalator position," must "compensate such person for any loss of wages or benefits suffered by reason of such employer's unlawful action." 38 U.S.C. § 2022.

■ The Act "is to be liberally construed for the benefit of those who left private life to serve their country...." *Fishgold v. Sullivan Drydock & Repair Corp., supra,* 328 U.S. at 285, 66 S.Ct. at 1111; *Coffy v. Republic Steel Corp.,* 447 U.S. 191, 196, 100 S.Ct. 2100, 2104, 65 L.Ed.2d 53 (1980). Congress, however, intended only to make returning veterans whole, not to redress a public wrong. *Boston & M.R.R. v. Bentubo,* 160 F.2d 326, 327 (1st Cir.1947). The Act therefore is not punitive in nature, but does empower the court to order full restitution for all damages incurred as a result of an employer's failure to properly reinstate a veteran. *See Helton v. Mercury Freight Lines, Inc.,* 444 F.2d 365, 367 (5th Cir.1971).

The issue before us is one of first impression. Hinky Dinky urges us to calculate damages on the basis of the entire "backpay period," *i.e.* the period extending from the date of reemployment to the date of judgment or, at the earliest, to the date on which Dyer was credited with the proper seniority date. Dyer, on the other hand, urges us to adopt a "period-by-period" approach under which his increase in earnings while in Fremont could not be used to offset, and in this case cancel, the earlier loss incurred in Sioux Falls.

Many cases rely on the general proposition that the veteran is to be given the difference between what he should have earned and what he actually earned. *See, e.g., Bankston v. Stratton-Baldwin Co.,* 441 F.Supp. 247, 251–52 (S.D.Ala.1977); *Chernoff v. Pandick Press, Inc.,* 440 F.Supp. 822, 826 (S.D.N.Y.1977); *Loeb v. Kivo,* 169 F.2d 346, 351 (2d Cir.), *cert. denied,* 335 U.S. 891, 69 S.Ct. 246, 93 L.Ed. 429 (1948); *Bentubo v. Boston & M.R.R.,* 66 F.Supp. 910, 911, (D.Mass.1946), *aff'd,* 160 F.2d 326, 327–28 (1st Cir.1947); *Reynolds v. S & S Corrugated Paper Machinery Co.,* 230 F.Supp. 855, 858, (E.D.N.Y.1964). None of the cited cases, however, involved the situation we have here where the actual earnings exceeded, for a time, the earnings the veteran

was entitled to receive under the Act.[1]

We conclude that Hinky Dinky is not entitled to offset the later increase in earnings against the lost wages and vacation pay Dyer suffered in the earlier period. Dyer is entitled to all earnings received as service manager of the Fremont, Nebraska store. The reasons for his promotion are immaterial.[2] Dyer was paid for the additional responsibilities and his earnings were no more than anyone doing the job would have received. When the district court offset the later increase in earnings against the earlier losses, it failed to liberally construe the Act for the benefit of the veteran. See *Fishgold v. Sullivan Drydock & Repair Corp., supra*, 328 U.S. at 285, 66 S.Ct. at 1111.

A similar problem was presented in *Helton v. Mercury Freight Lines, Inc.*, 444 F.2d 365 (5th Cir.1971). The veteran in *Helton* worked overtime in a job which paid less per hour than the job to which he was entitled. The court ruled that since the better-paying job required little overtime, it was error to reduce the veteran's lost wage claim by the overtime earnings. The court reasoned that "the company is paying for only what it received and for an expense it would have incurred anyway." *Id.* at 368. See also *MacKnight v. Twin Cities Broadcasting Corp.*, 13 CCH Labor Cases § 64,067 (D.Minn.1947) (court refused to offset earnings from moonlighting job against lost wages from primary job).

Hinky Dinky primarily relies on *Simons v. Chicago Great Western Ry. Co.*, 262 F.Supp. 334 (Hanson, J., N.D.Iowa 1966). The court in *Simons* compared plaintiff's actual earnings with the earnings of nine individuals who probably were entitled to less seniority than plaintiff. The earnings of the nine varied widely over the three relevant years, although one of the individuals did earn more than plaintiff in two of the three years. After noting that "men with seniority [could] in some ways govern their own earnings," the court found that plaintiff's actual earnings over the three years exceeded the total average income of the three highest paid individuals on the seniority list. *Id.* at 336–37. The court denied any award of back wages because it found "that any loss ... [was] purely a matter of speculation or conjecture." *Id.* at 336. We find *Simons* to be inapposite to this case where there is no speculation or conjecture on the losses.

The purpose of the Veterans' Act is "that the veteran should be made whole." *Helton v. Mercury Freight Lines, Inc.*, 444 F.2d 365, 367 (5th Cir.1971). Title VII and the National Labor Relations Act serve similar purposes. One of the central purposes of Title VII is "to make persons whole for injuries suffered on account of unlawful employment discrimination." *Albermarle Paper Company v. Moody*, 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975). *Albermarle* makes plain that Title VII is "expressly modeled on the backpay provisions of the National Labor Relations Act." 422 U.S. at 419, 95 S.Ct. at 2372.

We agree with Dyer's argument that a period-by-period approach insures that a veteran in Dyer's position is made whole. When a veteran earns more in a

1. In most of the cases, the actual earnings were less than what the veteran was entitled to receive under the Act. *Bankston v. Stratton-Baldwin Co., supra*, 441 F.Supp. at 251–52; *Chernoff v. Pandick Press, Inc., supra*, 440 F.Supp. at 824, 826; *Loeb v. Kivo, supra*, 169 F.2d at 348–49; *Bentubo v. Boston & M.R.R.*, 66 F.Supp. at 911. In one case, although actual earnings were more than what the veteran was entitled to receive under the Act, there was apparently no prior period during which the veteran's actual earnings were less than the earnings he was entitled to receive under the Act. Consequently, the veteran sustained no

damage. *Reynolds v. S & S Corrugated Paper Machinery Co., supra*, 230 F.Supp. at 857–58.

2. Although Hinky Dinky claims that it offered the position only to resolve the seniority dispute, the company does not contend that the parties thereby settled this action. The parties differ as to the reasons behind this offer. Hinky Dinky claims that the offer was made solely to resolve the dispute over seniority while Dyer claims that he would have preferred remaining in Sioux Falls at the proper rate of pay. Moreover, there has been no showing that Dyer waived his rights under the Act by accepting the position.

later period and these higher earnings exceed the wages to which he is entitled under the Act, the fruits of the higher paying job must not be deducted from any back pay for other periods during which the veteran suffered a wage loss due to a violation of the Act. Various periods could be utilized, *e.g.,* quarter-by-quarter or year-by-year. Dyer suggests a pay-period-by-pay-period approach. This is the approach recommended by the Department of Labor. *See* U.S. Department of Labor, *Veteran's Reemployment Rights Legal Guide and Case Digest* § 7.25 at pp. 1007–08 (1964); U.S. Department of Labor, *Veteran's Reemployment Rights Handbook* 131–35 (1970). Neither the Department's *Legal Guide* nor its *Handbook* has the status of interpretive regulations, but they provide informed guidance. *Cf. Monroe v. Standard Oil Company,* 452 U.S. 549, 563, n. 14, 101 S.Ct. 2510, 2518, n. 14, 69 L.Ed.2d 226 (1981); *Helton v. Mercury Freight Lines, Inc., supra,* 444 F.2d at 368, n. 4; *Skidmore v. Swift & Co.,* 323 U.S. 134, 136, 140, 65 S.Ct. 161, 162, 164, 89 L.Ed. 124 (1944).

This court recently adopted a year-by-year approach to determine an employer's liability for backpay in an action brought under the Age Discrimination in Employment Act and Title VII of the Civil Rights Act of 1964. *Leftwich v. Harris-Stowe College,* 702 F.2d 686 (8th Cir.1983). In another employment discrimination case, *Harkless v. Sweeny School District,* 466 F.Supp. 457 (S.D.Tex.1979), *aff'd,* 608 F.2d 594 (5th Cir.1979), the district court adopted a period-by-period approach in calculating backpay damages. 22 F.E.P. Cases at 1567. Certain of the plaintiffs in *Harkless* found other jobs where their earnings were greater than if they had remained with the defendant school district. The greater earnings were not used to offset lost wages in prior years. The court reasoned that some of the plaintiffs, even if not discriminated against, would have obtained better-paying positions elsewhere and left the defendant school district. *Id.* The plaintiffs' bounty should be retained by them rather than returned to their employer by way of an offset against past losses caused by the employer.

The NLRB has adopted a quarter-by-quarter approach to calculating backpay in unfair labor cases under the National Labor Relations Act which has been approved by the Supreme Court. *See National Labor Relations Board v. Seven-Up Bottling Co.,* 344 U.S. 344, 73 S.Ct. 287, 97 L.Ed. 377 (1953). We reject Hinky Dinky's argument that the National Labor Relations Act would not be analogous because it has its own enforcement machinery, the NLRB, while the Veterans' Act relies upon the courts. It is the purpose of the two Acts, to make the employee whole, that is material to our analysis.

We conclude that on the record before us a pay-period-by-pay-period approach properly insures that Dyer is made whole, and that the purpose of the Veterans' Act is fulfilled.

For the foregoing reasons, we reverse and remand this case to the district court with instructions that Dyer be awarded backpay, together with prejudgment interest. *See Hembree v. Georgia Power Co.,* 637 F.2d 423, 429–30 (5th Cir.1981).