Mildred HARKLESS et al., Plaintiffs,

v.

SWEENY INDEPENDENT SCHOOL
DISTRICT et al., Defendants.

Civ. A. No. 66–G–34.

United States District Court,
S. D. Texas,
Galveston Division.

Findings of Fact and Conclusions of Law
Relating to Back Pay and Attorneys
Fees Dec. 7, 1978.

Supplemental Findings of Fact and Con-
clusions of Law Relating to Back Pay
and Attorneys Fees Jan. 9, 1979.

Second Supplemental Findings of Fact and
Memorandum Opinion Feb. 2, 1979.

Weldon H. Berry, Houston, Tex., for
plaintiffs.

Grant Cook, Houston, Tex., for defend-
ants.

FINDINGS OF FACT AND CONCLU-
SIONS OF LAW RELATING TO
BACK PAY AND ATTORNEYS FEES

COWAN, District Judge.

On December 2, 1977, the United States
Court of Appeals for the Fifth Circuit, re-
manded the above-styled case to this court
for further proceedings not inconsistent
with the opinions of the Court of Appeals.
The purpose of these findings of fact and
conclusions of law is to record this court's
findings of fact and conclusions of law re-
lating to back pay, attorneys fees, to give
counsel certain instructions concerning the
preparation of the judgment and to sched-
ule further proceedings.

After remand the parties commenced discovery and other efforts for the purpose of collecting the information and creating a record sufficient for this court to make findings of fact and conclusions of law concerning back pay, attorneys fees, and claims for mileage. The record before the court consists of interrogatories and answers thereto, a stipulation which the parties filed herein on October 23, 1978 relating to the amounts of money that would have been paid to plaintiffs had they been continuously employed by the Sweeny Independent School District (hereinafter "SISD") from May 1966 through December 1977, or May 1978. In addition, plaintiffs have filed sworn answers stating the amounts of money that they actually earned during the period from May of 1966 through May of 1978, for the purpose of allowing the court to compute the back pay. The depositions of certain plaintiffs have been taken and are on file herein. The parties have stipulated that the court, in making its damage findings, may consider all of the material described in this paragraph.

The attorneys who have performed legal services for the plaintiffs over the years, have filed affidavits setting forth facts relating to their claims for attorneys fees. The parties have appeared on the 30th day of November, 1978, and introduced testimony of Mr. James Gray and tendered Mr. Weldon Berry for cross-examination.

The parties have stipulated that the court may make, on the basis of the record described above, determinations concerning back pay and mileage. The court, after review of the material described above, makes the following findings of fact and conclusions of law:

## GENERAL FINDINGS APPLICABLE TO SEVERAL PLAINTIFFS

### Problem Relating to Decedents

Two of the plaintiffs, Benjamin Leviston and Velma Shelby, are deceased. There is no evidence in the record from which the court can determine the identity of the beneficiaries of these two decedents. In addition, there is no evidence before the court which would enable the court to make findings concerning the division of back pay and mileage attributable to Benjamin Leviston's beneficiaries and Velma Shelby's beneficiaries. The record must be supplemented in this regard.

In addition, the parties have cited to the court no authorities indicating who are the proper and indispensable parties in a case of this nature, i. e., a case where a school teacher has been wrongfully discharged and dies prior to the entry of a decree awarding back pay and other equitable relief.

### Mileage

■ Many of the plaintiffs, while employed at SISD lived within walking distance of the school and thus had no commuting expense. Other plaintiffs were employed not only as teachers but also as bus drivers, and therefore incurred no commuting expense because they were driving the school bus.

This court believes it is equitable to reimburse the plaintiffs for commuting expense directly and proximately caused by a particular plaintiff's termination of employment with SISD where it can be said with a reasonable degree of probability that the plaintiff would have continued to work for SISD and where it is clear from the record that after seeking new employment, the plaintiff was required to incur commuting expense which would not have been incurred had it not been for the wrongful termination.

The court has attempted to deal with the question of mileage in the findings relating to each individual plaintiff. Any of the findings which are not consistent with the basic philosophy expressed in this portion of the findings should be brought to the court's attention at the scheduled hearing.

### "Adjusted Income" Theory

■ With reference to plaintiffs Woodard, Jones and Jammer, and perhaps others, the plaintiffs assert an "adjusted income" theory. This theory is that these particular plaintiffs, at the time they

worked for SISD, were being paid a certain amount of money each year for working 180 days. Each of these three plaintiffs, the theory goes, after seeking additional employment, went to work in jobs where they were required to work more than 180 days per year, and thus their earned income should be adjusted to reflect this inequity.

While this theory may have some feasibility in theory, the court has found it very difficult to apply in practice. For example, with reference to Mr. Woodard, since his termination he has worked for the Texas Department of Corrections as a teacher and also has worked as a longshoreman. Plaintiffs' basic theory with reference to Mr. Woodard, is that he would have made his attributed income at SISD by working 180 days per year; whereas, in the various occupations which he has followed since his termination, he has been required to work "an entire year." There are several difficulties with this theory.

First, it is not accurate, in the court's judgment, to say that a teacher is paid for being in the classroom 180 days per year and only needs to work 180 days per year. The school district who pays a teacher for being in the classroom 180 days per year also has a right to expect that the teacher will be engaging in study, planning, and out-of-classroom work during the other days of the year. A teacher is a professional, just like a lawyer or a judge. Certainly it is not accurate to say that a trial judge gets paid $XX per year for holding court six hours a day 200 days per year.

In addition, there is no proof that Woodard, or the other plaintiffs who assert this theory, were required to work or teach more than 180 days per year to earn the amounts of money which they earned at the occupations which they began to occupy when they left SISD. For example, Mr. Woodard, as a longshoreman, probably did not work more than 180 days per year, based on the court's judicial knowledge concerning the earnings of a longshoreman. In any event, there is no evidence before the court from which the court is able to determine that Mr. Woodard worked more than 180 days per year as a longshoreman to earn the amounts of money which he earned as longshoreman.

The court does not believe that the court has before it sufficient facts to rationally apply the "adjusted income" theory, and suspects that no matter how much time had been spent preparing and presenting evidence, that this is the type of theory which looks partially feasible in theory but which can never be satisfactorily applied in practice. The court, therefore, as a finding of fact and a conclusion of law, rejects the "adjusted income" theory.

*Method of Computing Back Pay*

The parties have stipulated upon an "attributed SISD income," that is, an amount of money which each of the plaintiffs would have earned had he continued to be employed in the SISD in the same capacity which he occupied at the time of his termination. Some of the plaintiffs never succeeded in earning as much money after their termination as they would have earned with SISD. With reference to these plaintiffs, the computation is a simple one, and can simply be made by subtracting the total actual earnings from attributed SISD earnings.

The problem arises in connection with those plaintiffs, who in certain years, have earned more money than they would have earned while working for SISD. It is the court's tentative view that SISD should receive credit in computing total back pay, for those years in which a particular plaintiff may have enjoyed or earned more income than he would have earned while working for SISD.

The court, however, has not heard oral argument on this issue, and before making a final decision would like to give counsel for those plaintiffs who have, in certain years, earned more money than they would have made working for SISD an opportunity to present oral argument on this matter.

*Instructions Concerning Preparation of Judgment*

The court believes that on the basis of the findings of fact and conclusions of law stat-

ed herein the parties can prepare an appropriate form of judgment in this case to be entered on December 27, 1978. The total amount of attorneys fees payable to the NAACP Legal Defense and Educational Fund, Inc., remains open and must be determined on the basis of testimony or other admissible evidence to be presented to the court on December 27, 1978.

In addition, the judgment will either be prepared so as to award the proper amount of back pay and other benefits to the legal beneficiaries of the decedents Leviston and Shelby, or in the event these beneficiaries cannot be joined by December 27, the judgment should provide that the case insofar as it relates to Leviston and Shelby should be severed from the principal case and carried under a separate number, Civil Action No. 66–G–34–A.

In addition, in the cases of those plaintiffs who in certain years have earned more money than they would have earned at SISD, the final computation of back pay attributable to those plaintiffs cannot be made until after the court has heard oral argument on December 27.

The parties will, however, to the extent possible, prepare an appropriate form of judgment with the hope that on December 27 the record in connection with damages on this matter may be complete and a final judgment entered as to all plaintiffs.

The court has set and hereby ORDERS, that a final hearing on the damage aspect of this case will be held on December 27, 1978 at 4:00 p. m. in the courtroom in Galveston.

### FINDINGS AS TO INDIVIDUAL PLAINTIFFS

*Florence Jones*

Florence Jones, after her termination by SISD was not employed during the balance of 1966. In 1967, she went to work for the Kendleton Independent School District—commencing in January of 1967 as a full time teacher. Mrs. Jones continued to work for Kendleton until 1970 when she went to work for the Texas Department of Corrections.

When Mrs. Jones went to work for the Texas Department of Corrections, the distance which she traveled to her work was about the same as when she was employed by SISD.

During the years 1967, 1968 and 1969, Mrs. Jones contends that she sustained damages in that while it was only a ten mile drive to the school at which she was teaching in Sweeny, she was required to drive 56 miles one way to her job in the Kendleton School District. Each day she taught at Kendleton, therefore, Mrs. Jones drove an extra 88 miles. In the 1967–68 school year, Mrs. Jones drove to work 180 days. This is also true during the 1968–69 school year, and during the period from August of 1967 until May of 1968, when she worked approximately another 125 days at Kendleton. During her period at Kendleton, therefore, Mrs. Jones drove a total of 42,680 miles more than she otherwise would have driven. Allowing mileage at the rate of 10¢ per mile, Mrs. Jones is also entitled to mileage of $4,268, plus interest at 6% per annum from January of 1970. Counsel for plaintiffs, in drafting the judgment, will compute interest on this mileage at the rate of 6% per annum from January of 1970.

During the year 1966, the year of her termination with SISD, Mrs. Jones had no earned income, and her back pay with an interest factor computed at the rate of 6% per annum is $5,588. The back pay for the years 1967, 1968, 1969, 1970, 1971, and 1972, with interest at the rate of 6% per annum shows back pay for those years as follows:

| | |
|---|---|
| 1967 | $5,535 |
| 1968 | 3,750 |
| 1969 | 4,891 |
| 1970 | 8,702 |
| 1971 | 1,869 |
| 1972 | 1,884 |

In each of the years since 1972, Mrs. Jones' earnings have exceeded the income which she would have received at the Sweeny Independent School District.

Mrs. Jones' total back pay award for the years 1966 through 1972, with interest com-

puted at 6% per annum is thus $32,219 if plaintiffs' position is adopted; otherwise, an adjustment may be necessary for those years in which Mrs. Jones earned more than she would have earned at SISD.

### Mildred Harkless

Following her termination with Sweeny Independent School District, Mildred Harkless moved to Houston. She was immediately able to obtain employment as a substitute teacher for the Houston Independent School District, and her answers to interrogatories filed herein on October 23, 1978, reveal that her income in HISD for the year 1966 was $4,226.48. Her SISD income would have been $3,149, and thus Mrs. Harkless had no loss of income during the year 1966.

During 1967, however, she would have earned $6,523 from SISD, but earned only $1,672 as a substitute teacher at Houston Independent School District, and thus had lost pay of $4,851 during the calendar year 1967. Applying an interest factor of 6% per annum, Mrs. Harkless is entitled to $9,217 as back pay for the year 1967.

During the year 1968 there was a $1,498 differential between what she earned as a substitute teacher and what she would have earned at SISD, and consequently, applying a 6% interest factor, she is entitled to $2,681 in back pay for the year 1968. Mildred Harkless' total back pay is therefore $9,217, plus $2,681 for a total of $11,898.

For the calendar years after 1969, Mrs. Harkless' earnings have been greater than if she had continued to work for SISD. There is an open question as to whether SISD should be credited for Mrs. Harkless' increased earnings.

Mrs. Harkless moved from Sweeny to Houston, and incurred expenses of $100, for which she is entitled to reimbursement plus 6% interest from June of 1966.

Mrs. Harkless claims $350 in commuting expense in Houston for the period of 1966 to 1968, but there is no showing in the record that the distance which Mrs. Harkless covered in Houston was greater than the distance which she would have commuted in Sweeny had she remained with SISD. In addition, after doing substitute teaching in Houston for a period, Mrs. Harkless moved to San Francisco where she received a Master of Arts in Business Administration from San Francisco State University. She claims certain commuting expense after moving to San Francisco, but the court is unable to find that there is sufficient causal connection between this commuting expense in California and Mrs. Harkless' termination.

The judgment should therefore provide for Mrs. Harkless' back pay for the years 1967 and 1968, plus $100 in moving expense.

### Georgia A. Leviston, widow of Decedent Benjamin Leviston

Georgia A. Leviston is the widow of Benjamin Leviston. Benjamin Leviston was terminated, along with the other plaintiffs, in 1966.

During the school year commencing in the fall of 1966, he went to work for the Cleveland Independent School District, where during that year, he earned $1,936. If he had continued to work at SISD he would have earned $3,573, and thus Leviston's beneficiaries have $1,637 (without an interest factor) in back wages for the year 1966. His total back pay due for the year 1966, computing an interest factor of 6%, is $3,290.

During the school year commencing in 1966, the Leviston family moved to Houston, and Benjamin Leviston commuted 40 miles to Cleveland. This 80-mile commute for 180 school days would yield a total of 14,444 miles, which at 10¢ a mile would yield a total additional commuting expense of $1,444. This $1,444 plus interest at the rate of 6% per annum from June 1, 1967 should be included in the judgment.

After a year with the Cleveland Independent School District, Mr. Leviston went to work for the North Forest Independent School District. Although he had additional commuting expense to the North Forest Independent School District which he would not have had to the Sweeny Independent

School District, the court is unable to determine from the evidence presented that the additional commute to the North Forest Independent School District was causally connected to the termination of Mr. Leviston's employment with SISD.

During the years 1967, 1968, 1969, 1970, 1971, 1972, 1973, 1974 and 1975, Mr. Leviston earned less money than he would have made if employed at SISD. Mrs. Leviston testified that her husband's health was not good much of the time after his termination. The great difference of $6,006 between attributed income and earned income in 1974 seems to the court probably properly attributable to Mr. Leviston's poor health and not to his earlier termination; therefore the $6,006 for 1974 is excluded from the computation. The total back pay, computed with an interest factor of 6% per annum, for Benjamin Leviston for each of the years in question is as follows:

| | |
|------|--------|
| 1966 | $3,290 |
| 1967 | 2,611 |
| 1968 | 4,421 |
| 1969 | 3,732 |
| 1970 | 2,875 |
| 1971 | 2,262 |
| 1972 | 1,791 |
| 1973 | 1,690 |

*Robert C. Woodard*

Woodard had worked for SISD for approximately 15 or 16 years, as both a teacher and a school bus driver. He was paid $100 per month for driving the school bus and also was relieved from any commuting expense.

After his termination Woodard went to work teaching at the Clemmons Unit of the Texas Department of Corrections, where he continued to teach during the years extending from 1966 through 1970. His earnings while teaching at the Clemmons Unit were somewhat less than those which he enjoyed at SISD, and in addition he incurred commuting expense which he would not have incurred while teaching at SISD.

In 1971, Woodard changed his occupation and became a longshoreman. His earnings as a longshoreman have been somewhat less than if he had remained a teacher at SISD.

Having rejected the "adjusted income" theory, the court therefore holds that the proper way to compute the back pay attributable to Robert C. Woodard and all other plaintiffs unless otherwise stated, is to deduct his actual total earned income during the years in question from his projected SISD income, and apply an interest factor of 6% per annum. The parties are directed to re-compute the back pay due Robert C. Woodard, applying this holding and including such a figure in the judgment to be prepared in this case.

Woodard had no commuting expense while employed at SISD. During the five school years that he taught at the Texas Department of Corrections, he commuted 23 miles round trip. Computing this mileage at the rate of 10¢ per mile, this yields additional commuting expense of $414 per year, which Woodard incurred during each of the five years that he was teaching at the Texas Department of Corrections. Woodard should thus be allocated, in the judgment to be prepared, the sum of $2,070 with interest computed at the rate of 6% per annum from the last day of each of the school years in which he incurred the expense. The judgment to be prepared by the parties will reflect this additional commuting expense.

This additional commuting expense of $414 over an 11-year period of time would total $4,554, and Woodard should receive compensation for this additional commuting expense. The parties in preparing the contemplated judgment, should compute interest at the rate of 6% per annum for the $414 for each of the years in question, as of the last school day of the year.

*John P. Jones*

After his termination, Jones initially went to work for the Texas Department of Corrections as a prison guard. During the year 1966 he earned less as a prison guard than he would have as a teacher at SISD. During the years 1967, 1968 and 1969, he worked as a teacher in the Huntsville Independent School District.

For the reasons stated herein, the court rejects the "adjusted income" theory with reference to John P. Jones, and finds that the back pay attributable to John P. Jones should be computed by determining the difference between a projected Sweeny income and the earned income, and applying a 6% interest factor.

In December of 1970, Mr. Jones had the misfortune to be involved in what was apparently a serious automobile accident which injured him so seriously that he was unemployed from December 20, 1970 until November of 1972. He alleges that this automobile accident occurred when he was driving from his home in Sweeny to "a job-related activity in Huntsville, Texas." Applying traditional concepts of proximate cause, the court cannot accept the proposition that the auto accident was caused by his termination and Mr. Jones' back pay should terminate as of December 1970.

Upon returning to the Texas Department of Corrections after the period of unemployment resulting from the automobile accident and the injuries received in that accident, Mr. Jones' earnings have exceeded his attributed earnings at SISD.

*Yarborough Kennedy*

Upon his termination by SISD, Yarborough Kennedy went to work for Dow Chemical Company as a laborer. During the balance of 1966 he earned more money than he would have earned as a teacher at SISD, and consequently he has no back pay due for the year 1966.

During the years 1967, 1968, 1969 he returned to work as a teacher at the Kendleton Independent School District, and for each of the years 1967, 1968 and 1969 he earned less money as teacher than he would have at SISD. His back pay, with interest at 6% for the years 1967, 1968 and 1969 is as follows:

| | |
|---|---|
| 1967 | $2,670 |
| 1968 | 2,424 |
| 1969 | 7,412 |

From the record before the court, the court is not able to determine that Yarborough Kennedy is entitled to back pay for the years 1970 through 1977. His answers to interrogatories refer to Exhibits A, B, C and D, but such exhibits were not attached and answers to interrogatories are therefore not before the court.

In addition, there is not sufficient evidence before the court to enable the court to assess additional commuting expense for Yarborough Kennedy. In his answers to interrogatories, Kennedy merely states a number of miles which he commuted for each of the years since 1966, but fails to establish in any way what his commute was at the time of his termination, and fails to give sufficient detailed information for this court to determine from a preponderance of the evidence, that Yarborough Kennedy did in fact sustain additional commuting expense.

*Decedent Velma Shelby*

With reference to the two terminated school teachers who have died before this date, the court feels the record must be supplemented. In neither instance is there sufficient evidence before the court for the court to determine who the proper beneficiaries are, or that all of the persons who are beneficiaries of these decedents have in fact been joined as plaintiffs.

Velma Shelby's back pay should be computed by taking the difference between her attributed Sweeny income and her actual earned income and applying an interest factor of 6%. Therefore, the back pay due Velma Shelby's beneficiary or beneficiaries is $4,181 for the year 1966, $10,351 for 1967, and $9,893 for the year 1968, for a total of $24,425.

*Lillian F. Jammer*

Mrs. Jammer has had a difficult time since her termination with the SISD. Initially, she did substitute teaching for the Columbia-Brazoria Independent School District, and thereafter, during 1968 did domestic work. Commencing in 1968, she has worked as a nurse's aide at either the Sweeny Community Hospital or the Matagorda Hospital. Her earnings in each of the years

since 1966 have been materially less than she would have earned at SISD. In addition, while employed by SISD she was in walking distance of the school at which she taught. Since 1966, however, she testifies that she has been required to commute a total of 10,000 miles per year. In this connection, the court cannot credit Mrs. Jammer's testimony that she commuted 10,000 miles per year during the years 1966, 1967 and 1968 because her earnings during those years were so nominal that it seems impossible that she would have commuted 10,000 miles per year for those years. The court will credit, however, her testimony that she commuted 10,000 per year for each year commencing in 1969 and that this 10,000 miles would not have been necessary were it not for her termination at SISD.

Having rejected the "adjusted income" theory as previously stated herein, the court holds that back pay with reference to Lillian Jammer should thus be computed on the basis of the difference between her attributed Sweeny income and her earned income with an interest factor of 6% per annum. Additional commuting expense should be allowable for the years 1969 through 1978 with interest commuted at the rate of 6% per annum from the last day of each calendar year.

### Willie Lee Dotson

After termination with SISD, Willie Lee Dotson began work as a substitute teacher with Houston Independent School District, and worked as a substitute with HISD during the years 1966, 1967 and 1968. He became a full time teacher with HISD in 1969 and has continued to work in that capacity since. In most, although not all of the years that he has worked for HISD, Mr. Dotson's earnings have been less than if he had been with SISD.

Mr. Dotson's back pay should be computed by deducting his actual earned income from his attributed SISD income for each of the years 1966 through 1978, and adding an interest factor of 6% per annum. Employing this method, total back pay attributable to Mr. Dotson is $34,519.

In addition, Dotson, like many of the other plaintiffs, while employed at SISD apparently lived within walking distance of the school. Since his termination made it necessary for him to move to Houston, during each of the years 1971 through 1977, he has incurred a 19-mile commute, for a total of 3,420 miles per year. Assuming 180 teaching days per year, Mr. Dotson should receive reimbursement at the rate of 10¢ per mile plus interest on each year's mileage expense calculated from the last day of the year in which the mileage was incurred.

The judgment will contain a sum for back pay and mileage attributable to Mr. Dotson on the basis of the findings contained herein.

### Alice Jones

After her termination, Alice Jones taught initially at Bay City, later at Angleton and ultimately at the Clemmons Unit of the Texas Department of Corrections.

Plaintiffs assert the same "adjusted income" theory with reference to Alice May Jones as they assert with reference to plaintiffs Robert Woodard, John Jones and Lillian Jammer, and the court rejects such "adjusted income" approach for the reasons stated above.

Alice Jones' back pay should be computed by subtracting her actual earned income from her attributed Sweeny income for the entire period in question.

In addition, the court is persuaded that the affidavit "Exhibit A" attached to the answers to interrogatories of Alice Jones accurately reflects the commuting expenses which she has incurred as a result of her termination by SISD and monetary compensation for these commuting expenses should be computed at the rate of 10¢ per mile, plus interest at the rate of 6% from the last day of each year in which the commuting expense was incurred.

### ATTORNEYS FEES

#### General Considerations

The computation of attorneys fees in this case has been difficult. Even if time rec-

ords had been kept, the computation of attorneys fees in a case which has extended for this period of time would be difficult. In this portion of the order, the court will describe the various factors which the court has taken into consideration in determining the amount of the attorneys fees.

First, the quality of the work and the result obtained has been excellent.

Second, another factor to be considered is the contingency of the fee payable. A jury, and the undersigned's predecessor have both determined that the plaintiffs' case was without merit. The possibility that the plaintiffs and their counsel would receive absolutely nothing for the extensive efforts which have gone into this case makes it apparent that until the Fifth Circuit Court of Appeals actually decided this case, there was a strong possibility, if not a probability, that all of the extensive work done in this case would be without remuneration. The contingency of the fee, therefore, should receive and has received serious and intensive consideration.

The standing of plaintiffs' counsel at the bar is excellent.

The court is persuaded that the estimates of time in the testimony presented are reasonably accurate and as accurate as would be possible under the circumstances.

Weldon Berry's estimate of 477 hours is probably conservative, as is his suggestion of a fee of $75 per hour, and the attorneys fees attributable to Weldon Berry should be computed on the basis of 477 hours at $75 per hour.

Ms. Gabrielle McDonald's affidavit of a total of 30.5 hours is accurate, and the fee payable to Gabrielle McDonald should be computed on the basis of 30.5 hours at $75 per hour. Counsel for defendants have stipulated that Ms. McDonald's affidavit may be considered.

At the trial of this case, Conrad K. Harper, then associated with the NAACP Legal Defense and Educational Fund, Inc. was lead counsel. Mr. Harper worked on this case from May of 1966 until December of 1970, or a total of three and one-half calendar years. Of course, this was not the only matter which Mr. Harper handled during that period.

After a review of the file, the undersigned is persuaded that Mr. Harper did expend a very large amount of time on this case and that the NAACP Legal Defense Fund should be compensated for Mr. Harper's work at the rate of $75 per hour.

The court has reviewed the affidavits of James C. Gray, Jr., assistant counsel at the NAACP Legal Defense Fund, and has considered Mr. Gray's testimony, and finds the summary of expenses commencing on page 3 of the Gray affidavit to be accurate. The undersigned cannot accept, however, the concept of reimbursing the NAACP Legal Defense Fund at "adjusted prices" but believes and holds that the judgment in this cause should be computed by reimbursing NAACP Legal Defense Fund for actual expenses incurred, with interest at 6% per annum from the last day of the year in which the cost was incurred. For example, in 1969, NAACP Legal Defense Fund incurred $4,519 in expense for a trial transcript. Judgment in this case should reimburse NAACP Legal Defense Fund for this $4,519 expense, plus interest at the rate of 6% per annum from December 31, 1969 to the date of judgment.

NAACP Legal Defense and Educational Fund, Inc. should be reimbursed for the work of James M. Mabrit, III, at the rate of $75 per hour for four hours.

In an effort to evaluate the reasonableness of the claims for attorneys fees, the undersigned has reviewed the entire file in this matter. This case, from its inception, has been characterized by numerous motions and pretrial conferences, extensive discovery and exhaustive pretrial work. In addition, the case was tried twice. The first trial was an 11-day jury trial. The second was a four-day non-jury trial.

The transcripts generated by these trials, and the briefs generated by the extensive motion practice are voluminous. In evaluating the reasonableness of the hours which counsel for plaintiffs state that they spent

on this matter, the court, of necessity, has been required to rely upon his own experience as a practitioner. The undersigned is persuaded that the estimates of hours compiled by counsel for plaintiffs are reasonable and conservative estimates considering the truly monumental amount of work devoted to this case by counsel for plaintiffs. In addition to the extensive work reflected by the papers on file herein, the court is aware, and the record will reflect that much of the work performed by counsel for plaintiffs is not reflected in the file, in the sense that it was time spent in interviewing witnesses, conducting investigation, attending to the administrative tasks of handling a protracted case of this nature, conferring with the ten individual plaintiffs.

The court recognizes that the defendant's counsel who has also worked long and diligently on this case, has expended a materially fewer number of hours than these findings reflect have been expended by counsel for plaintiffs. There are, the court believes, a number of reasons for this difference. First, defendants throughout have been represented by essentially one lead counsel. In a case of this nature, it is certainly foreseeable and understandable that a great number of lawyers would have worked on the case from the plaintiffs' point of view, and plaintiffs cannot be faulted for the necessity of substituting counsel from time to time. Second, plaintiffs during the trial stages of this case at all times had both the burden of proof and the burden of persuasion, and it is understandable that in a trial a party with those burdens would expend a greater amount of time than would the party who does not bear those burdens. Third, in both of the appeals the plaintiffs were the appellants. It is well recognized that in most instances an appellant has a more burdensome chore in preparing a brief and other appellate documents than does the appellee whose position is buttressed with trial court findings.

On the other hand, defendants have handled this entire matter in slightly over 1,000 hours.

The court is not prepared to accept, and should, of course not accept because it is not yet supported by admissible evidence, the estimate of Mr. Harper concerning the total number of hours which he spent working on this case. At the hearing scheduled herein, counsel for plaintiffs must be prepared to introduce admissible evidence concerning Mr. Harper's estimates and other estimates concerning the number of hours Mr. Harper spent in connection with the trial of this matter.

*Inadequacies of Present Record*

There are a number of inadequacies in the present record which have made it necessary for the court to schedule another hearing in this matter. These inadequacies, and the steps which will be taken to remedy these inadequacies are listed below:

1. Benjamin Leviston and Velma Shelby are deceased. There is nothing before this court to indicate that the persons named as beneficiaries of these two decedents are all of the beneficiaries. Plaintiffs must present testimony or admissible evidence showing the identity of all of the beneficiaries of these decedents. Any other additional beneficiaries must be joined as parties. The court must be presented evidence concerning an appropriate division of the back pay, and mileage attributable to the various beneficiaries of these decedents.

2. There is a lack of clarity in the record concerning the extent to which SISD has already reimbursed the NAACP Legal Defense and Educational Fund, Inc., for certain of the appellate expenses. This ambiguity must be clarified.

3. There is no testimony in admissible form concerning the number of hours spent on this case by lead counsel Conrad Harper during the trial of this cause. The court understands that Mr. Harper's deposition will be taken or that he will be present to testify in person at the next scheduled hearing concerning this matter.

4. There may well be inconsistencies or inaccuracies in this order. If so, counsel should be prepared to point these out at the time of the hearing scheduled for December 27, 1978.

5. Counsel for plaintiff will have by December 27, a form of judgment consistent with the findings herein and leaving blanks for those matters still to be resolved, with the expectation that it will be possible to enter a final judgment on this matter at the hearing on December 27, 1978 by deciding open questions and filling in, on the basis of the evidence, blanks in the judgment.

## SUPPLEMENTAL FINDINGS OF FACT AND CONCLUSIONS OF LAW RELATING TO BACK PAY AND ATTORNEYS FEES

### Procedural Posture

Following the previous hearing of December 2, 1977 and this court's preliminary findings of fact and conclusions of law filed on December 7, 1978, the court conducted a supplemental hearing on December 27, 1978. At that time counsel advised that heirship proceedings relating to the deceased claimants were in process and should be completed by early January 1979. In addition, the court at that time heard oral testimony from Sanford E. Bishop, Jr. and Yarborough B. Kennedy. Plaintiffs also introduced the deposition of Conrad K. Harper. Plaintiffs also filed, with leave of court, a document entitled "Plaintiffs' Motion to Supply Missing Exhibits and for Supplementary Findings of Fact," and the missing exhibits attached to such document, filed on December 13, 1978, were deemed admitted into evidence.

The parties also filed additional briefs relating to the court's "Findings of Fact and Conclusions of Law Relating to Back Pay and Attorneys Fees," filed on December 7, 1978.

Based upon this additional evidence, and the additional briefing, the court makes the following supplemental findings of fact.

### Supplemental Findings Relating to Attorneys Fees

The court finds that Conrad K. Harper, while an employee of the NAACP Legal Defense Fund, Inc., expended a total of 2,036 hours on the *Harkless* case and that the NAACP Legal Defense Fund, Inc. should be compensated at the rate of $75 per hour for his time.

The court finds that Prof. Hawood Burns devoted a total of 150 hours in the trial of the above-styled case, and the NAACP Legal Defense Fund, Inc. should be compensated at the rate of $75 per hour for his time.

The court finds that Sanford Bishop, while an employee of NAACP Legal Defense Fund, Inc. devoted a total of 676 hours in the above-styled case, and that the NAACP Legal Defense Fund, Inc. should be compensated at the rate of $75 per hour for his time.

The court finds that Sanford Bishop has devoted a total of 30 hours of time to this case since his employment with NAACP Legal Defense Fund, Inc. terminated, and that he should individually be compensated at the rate of $75 per hour for that time.

In making the above findings of fact relating to attorneys fees and the findings of fact contained in the court's memorandum opinion of December 7, 1978, the court has relied upon the factors set forth on pages 17 through 20 of the findings filed on December 7, 1978, and upon the following additional factors:

1. Review of the deposition of Conrad K. Harper has reinforced and reintensified the undersigned's conviction that this case was, from the standpoint of the plaintiffs' counsel, an extremely difficult one to handle.

2. A case which requires as much time as did the case at bar in effect precludes the lawyers who are doing the work from accepting other employment or performing other legal services. In this connection, the court will take judicial notice of the fact

that a public service organization such as the NAACP Legal Defense Fund, Inc. has more matters upon which it could spend its time than it has time available to devote to the available matters. The time devoted to the *Harkless* case, therefore, precluded counsel for plaintiffs from devoting the same time to other matters.

3. The case in question is an unusual one and thus it is not easy to make a conclusion as to the "customary fee." There is no real "custom" with reference to a fee in a case of this nature. In this situation, however, where the recovery was contingent, the result has been excellent, where very substantial relief has been obtained, this court's experience and judgment supports the conviction in the court's mind that $75 per hour is a very reasonable hourly rate for the time expended in this case and that the time expended is not disproportionate to the work performed and the results obtained.

4. It is apparent from a review of the file and from the deposition testimony of Conrad Harper that much of the work involved was priority work that delayed other legal work, or created a situation in which work was done after normal working hours or on normal holidays. The case was set for trial on many occasions; it was necessary to prepare the case for trial a number of times; multiple deadlines were established; and much of the work was in fact "priority work which delayed the lawyer's other legal work . . ."

5. The briefing filed with the court subsequent to the previous hearing has persuaded the court that the above-styled case, and its result, in addition to being significant from the standpoint of these individual plaintiffs, is extremely significant as a legal precedent, and this factor is properly considered and has been considered by the court in making the determina-

tions set forth herein with reference to fees.

6. The court has considered the experience, reputation and ability of the attorneys involved. Many of the attorneys involved in this case, particularly the attorneys working on the case from the standpoint of the NAACP Legal Defense Fund, Inc., were fairly young lawyers, recently licensed; however, it is apparent that the quality of their work has been excellent. This is a case in which the court has applied the language of the Fifth Circuit in *Johnson v. Georgia Highway Express*, 488 F.2d 714 at 719, where the court said:

If a young attorney demonstrates the skill and ability, he should not be penalized for only recently being admitted to the bar.

In the undersigned's judgment, this is a case where the young attorneys involved on behalf of the plaintiffs did in fact demonstrate skill and ability.

7. Because of the unique nature of this litigation, the undersigned has not had available comparable awards in similar or identical cases; however, it is the belief of the undersigned that the findings herein are not inconsistent with the other findings in cases tried within the Southern District of Texas.

### Computation of Back Pay—Method

This court's order filed December 7, 1978 leaves open the question of computation of back pay in those instances in which a particular plaintiff has, in some of the years since his or her discharge, earned more money than he or she would have earned with SISD. The parties have briefed this question and have presented to the court arguably analogous authorities, none of which are precisely in point.

After a review of these authorities, however, the following appears to the undersigned to be an equitable method of dealing with those claimants who in certain years

have earned more money than they would have earned while employed by SISD. In the first place, any computation of this nature is to some degree hypothetical. No one can say with certainty how long any of the plaintiffs would have remained with SISD had there been no wrongful termination.

A rational and fair method of dealing with the problem, however, and one which is consistent with the authorities cited, would be the following method: Each of the plaintiffs earned less money either in the year of termination or in the immediately succeeding years than if he or she had remained with SISD. Thereafter, some plaintiffs succeeded in establishing themselves in positions where their earnings were greater than if they had remained with SISD. It seems to this court rational that had there been no wrongful termination, some of the plaintiffs would, over the years, have obtained positions in which they would have earned more money than they were earning at SISD and would have left SISD for the better paying jobs. Therefore, a rational method for computing back pay in a situation of this nature is to award back pay for those years, immediately following termination, in which the individual plaintiff made less money than he made at SISD; however, if subsequently the individual claimant succeeded in obtaining employment where he consistently made more money than he made at SISD, back pay will terminate as of the date that the person obtained a higher paying job but SISD will not receive credit for those greater amounts earned after that date when the plaintiff succeeded in obtaining a better paying job.

The best example of the application of this method is in connection with Mildred Harkless. Mildred Harkless obtained employment as a substitute teacher for Houston Independent School District, and during the year 1967 she earned $4,851 less as a substitute teacher for HISD than she would have earned for SISD, and thus she is entitled to this $4,851 in back pay for the calendar year 1967 along with interest at 6% per annum, for a total of $9,217 as back pay for the year 1967.

For 1968, there was a $1,498 difference between what she earned as a substitute teacher and what she would have earned at SISD, and consequently she is entitled to this $1,498 with interest at 6% for the year 1968.

After 1969, Mrs. Harkless' earnings were greater than if she had continued to work for SISD and consequently Mrs. Harkless will be awarded back pay for the years 1967 and 1968, and SISD will not be given credit for the excess earnings which she enjoyed during and after 1969.

### "Adjusted Income" Theory

The court has reconsidered the adjusted income theory in the light of the arguments presented on December 27, and the additional briefing of the parties. The court still does not feel confident that it can with any degree of certainty or mathematical accuracy apply the "adjusted income" theory, and thus the undersigned's rejection of the "adjusted income" theory remains.

### Expenses and Costs

NAACP Legal Defense Fund, Inc. has encountered some difficulty in making complete proof of all expenses and costs incurred because of the long period of time over which this case has extended. Nevertheless, James Gray, Jr., has filed herein, and has appeared and submitted himself for cross-examination with reference to an exhibit entitled "Damage Exhibit 1" in which he has itemized and documented total expenses in the amounts shown on the various invoices and records appended to Damage Exhibit 1. The court has examined Damage Exhibit 1 and accepts the credibility and reliability of the exhibit and instructs counsel, in preparing the judgment, to total the expenses documented in Damage Exhibit 1 and to award the total of that sum of the NAACP Legal Defense Fund, Inc., as a portion of the award to NAACP Legal Defense Fund, Inc.

The parties had, at the earlier hearing expressed uncertainty as to whether or not

SISD had already compensated plaintiffs for certain of the appellate expenses, including preparation of transcripts; but as the court understands the representations of counsel, it has now been determined that no such reimbursement has taken place, and thus the judgment in this case should grant NAACP Legal Defense Fund, Inc. full reimbursement for all of the expenses outlined and itemized in Damage Exhibit 1.

*Reexamination of Findings Relating to Florence Jones*

In light of the additional evidence and the additional briefing, the court has reexamined the findings with reference to Florence Jones contained on pages 7 and 8 of the findings of fact and conclusions of law previously filed on December 7, 1978. Findings with reference to Florence Jones appear to be correct and Florence Jones is thus entitled to a back pay award of $32,219.

*Supplemental Findings Relating to Mildred Harkless*

A review of "Plaintiffs' Reply Memorandum on Back Pay and Attorneys Fees" filed herein on December 26, 1978 reveals that there may have been an error in the sworn testimony relating to Mildred Harkless. The sworn testimony, consisting of the plaintiffs' answers to interrogatories, upon which the court must base its decision relating to Mildred Harkless indicates that she earned $4,226.48 as a substitute teacher for HISD during 1966. If that is correct, she would not be entitled to any back pay for the year 1966. Counsel state, however, that this was an error, and that Mrs. Harkless' actual earnings from the Houston Independent School District were only $540.

The court will give counsel for Mrs. Harkless leave to file supplemental sworn testimony on this point by January 31, 1979. In other words, if by January 31, counsel file sworn testimony correcting this apparent error, the court will enter supplemental findings; however, the court cannot make these findings based merely on representations and briefs, but must have sworn evidence upon which to base its findings.

The court's findings for back pay as to Mildred Harkless for the years 1967 and 1968 appear to be appropriate.

The court cannot accept the proposition that Mrs. Harkless is entitled to be reimbursed for her moving expenses to San Francisco, California. It is impossible to determine whether or not Mrs. Harkless would have ultimately moved to San Francisco and received the higher education which she received there had she been retained at SISD, and therefore, the court declines to award her moving expenses to San Francisco.

While it would be equitable to award Mrs. Harkless her expenses for attending trial, the court has been cited to and is aware of no authority authorizing the court to award a litigant expenses for attending his own trial; and thus in the absence of direct authority, the court must deny Mrs. Harkless' recovery for the $900 expenses which she incurred in coming to Galveston for the trial of the case.

*Reconsideration of John Jones' Case*

The court has reconsidered John Jones' case in the light of the plaintiffs' reply memorandum on back pay and attorneys fees filed December 26, 1978, and still cannot, in good conscience, on the basis of the evidence presented, find and hold that the automobile accident which disabled Mr. Jones for a considerable period of time is attributable to events which would not have taken place had Jones not been unlawfully removed from his employment.

The court has had difficulty making a decision concerning an equitable course of action with reference to John Jones' mileage. It would appear that since his wrongful termination, Jones has, except for the period in which he was disabled, commuted from Sweeny to Huntsville. At some point in time it seems to the court that Mr. Jones had an obligation to mitigate his damages in this regard by either finding employment closer to home or moving to Huntsville; accordingly, the court has determined the

most equitable course would be to award Jones mileage for the years 1966, 1967, 1968, 1969 and 1970, but not thereafter. According to Exhibit A to his affidavit, Jones commuted a total of 34,080 miles during this period of time and he should be awarded mileage at the rate of 10¢ per mile with interest at 6% from the last day of each year in which the mileage was incurred for the years 1966–1970.

*Reconsideration of Damages Attributable to Yarborough Kennedy*

Mr. Kennedy appeared and testified on December 27, 1978. He testified as to the number of miles which he commuted in each of the years 1966 through 1977, and also testified that while employed at SISD he was within walking distance of school and had no commuting expense. According to Mr. Kennedy's sworn testimony, which the court accepts as credible and sincere, Mr. Kennedy has commuted during the years 1966 through 1977 as follows:

| | |
|---|---|
| 10,200 | 1966 |
| 2,520 | 1967 |
| 2,520 | 1968 |
| 10,800 | 1969 |
| 13,400 | 1970 |
| 10,600 | 1971 |
| 8,000 | 1972 |
| 4,400 | 1973 |
| 14,400 | 1974 |
| 10,980 | 1975 |
| 7,980 | 1976 |
| 4,200 | 1977 |

For the years 1967, 1968 and 1969, however, Kennedy rode about one-fourth of the time with Mrs. Florence Jones, also a teacher at Kendleton Independent School District. Therefore, the figures for 1967, 1968 and 1969 should be diminished by 25% and mileage for Mr. Kennedy should be computed at the rate of 10¢ per mile with interest at the rate of 6% per annum from the last day of each year in which the commuting expense was incurred.

*Reconsideration for Mileage Attributable to Benjamin Leviston*

At oral argument the parties referred the court to page 7, et seq. of the deposition of Georgia Leviston which does contain testimony upon which a mileage computation could be made attributable to the time Leviston taught at the North Forest School and at the Texas Department of Corrections. During the school years commencing September 1967, 1968, 1969, 1970, 1971, 1972, 1973 and 1974, Leviston taught at the North Forest School where he had a 40-mile round trip commute. This would result in total commuting mileage of 7,200 for each of those years. Leviston's beneficiary should receive mileage at the rate of 10¢ per mile for each of those years.

In September of 1975, Leviston went to work for the Texas Department of Corrections and worked there through February 1976. During those five months he commuted 20 miles one way. Assuming 20 working days per month, this would be a total of 100 days at 40 miles per day, or a total of 400 miles attributable to that period of time.

Mileage for those periods should be included in the damages awarded Mrs. Leviston.

*Instructions Concerning Preparation of Judgment*

The court's impression is that the court has now made all findings of fact and conclusions of law necessary to prepare a judgment, and that the primary work of preparing a judgment consists of making the mathematical computations called for by these conclusions. The parties will prepare, and if possible agree upon, an appropriate form of order consistent with the findings of fact and conclusions of law stated herein and in the order of December 7, 1978. The form of judgment, along with the supplemental corrected evidence with reference to Mildred Harkless, should be submitted on or before February 1, 1979.

SECOND SUPPLEMENTAL FINDINGS
OF FACT AND MEMORANDUM
OPINION

*Introduction*

On the 29th day of January, 1979, counsel appeared in chambers and brought to the

court's attention that the court had not ruled upon the factual dispute relative to Florence Jones' case. Counsel for defendant also reargued his position with reference to attorneys fees and urgently and sincerely requested the court to reconsider the award of attorneys fees in this case. The court has seriously reconsidered its prior holdings with reference to attorneys fees, and the court's thinking with reference to this reconsideration is set forth below. The court's earlier findings relating to the damage aspects of this case are attached hereto and incorporated by reference.

### Supplemental Findings Relating to Florence Jones

The key question upon which the court has not ruled in connection with Florence Jones' case is: Has Florence Jones proved by a preponderance of the evidence that she, in reasonable probability, would have been upgraded to a full time teacher—as distinguished from a substitute teacher— had she not been wrongfully terminated? The evidence in this connection consists of the deposition testimony of Florence Jones and the testimony of John Tate.

From the testimony of Florence Jones, it would appear that she sincerely believes that had it not been for her wrongful termination, she would have been promoted. On the other hand, Florence Jones had been a substitute teacher for ten years. Mr. Tate has testified to facts concerning the frequency of employing substitute teachers and concerning the policies of the defendant with reference to the employment of substitute and regular teachers.

Under the circumstances, particularly in view of the fact that Florence Jones had been a substitute for ten years and had not been promoted, it seems very questionable to the court that she would have been promoted to a full time teacher. Accordingly, her back wages should be computed on the assumption that she would have remained as a substitute teacher.

### Computation of Air Fares

Counsel also brought to the attention of the court some ambiguity in court's finding concerning the computation of expenses, particularly with reference to air fares. The ruling of the court is that no air fares should be included in the computation of expenses except those for which there exists contemporary documentation, i. e., memoranda or invoices made at the time of incurring the air fare expense.

■ Counsel for defendant has also urged that prejudgment interest should not be allowed upon expenses. In this connection the undersigned is unable to distinguish between expenses and any other form of property damage. Prejudgment interest is routinely and commonly allowed in connection with claims for property damage, and the court cannot logically perceive why a different rule should apply with reference to the computation of prejudgment interest on expenses incurred where a party is entitled to recover for expenses of litigation.

### Attorneys Fees

Counsel for defendant has argued with great sincerity and urgency that the court's award of attorneys fees is shocking. To support this position, he urges essentially four arguments, to wit:

1. The attorneys fees awarded are approximately 80% of the back pay and other damages awarded the plaintiffs and this is a disproportionate ratio. Counsel, while recognizing the difference between this case and a commercial suit on a note, argues that there should be some more definite relationship between the recovery to the plaintiffs and the attorneys fees awarded, and infers at least that the recovery should be something in the range of the 10% normally awarded for collecting a note or the 33⅓% customary in personal injury litigation, or, at least, that an 80% ratio of attorneys fees to recovery is simply too high and thus shocking.
2. Counsel for plaintiffs have kept no time records and thus their estimates

of time spent in computing the fee is inherently unreliable even if sincere.

3. Counsel for all plaintiffs recognized at the time they undertook the prosecution of the case that they might well be spending extensive amounts of time without reimbursement.

4. There is no evidence of obstinate obduracy on the part of the defendant, but on the contrary, defendants were caught in a period of change in which they attempted to do the right thing but unwittingly violated the law, which was evolving and thus not fully determinable.

The court has carefully considered each of the urgently and sincerely advocated arguments above and will record the court's reasoning with reference to each of these arguments:

1. *Reasonable Proportion Argument*

While this court regrets the size of the award of the attorneys fees and the perhaps crushing burden which the judgment here may impose upon the defendant school district, this does not appear to the court to be a situation in which the amount of the fee should be determined by the monetary amount in controversy.

Even if each of these plaintiffs had within a very short period of time obtained a better paying job and the back pay was thus nominal, the vindication of principles for which these plaintiffs and their attorneys struggled would have been extremely important. The plaintiffs and their counsel were struggling in this cause not for a few dollars in back pay, but for vindication of their right to equal treatment. Plaintiffs' self esteem and professional reputations were in issue—not just dollars.

It would be difficult to overstate the frustrations, delays, discouragement and difficulties to which counsel for plaintiffs were subjected during the interminable course of this protracted litigation. To put it mildly, counsel for plaintiffs have traversed a long and bumpy road in this case. The fact that counsel for plaintiffs had the determination to endure is certainly a material factor in setting this fee. Until the recent decision of the Fifth Circuit Court of Appeals finding that, as a matter of law, plaintiffs had been subjected to discrimination, plaintiffs' chances of success seemed small.

From the standpoint of the plaintiffs, it can accurately be stated that the fact of recovery, and the fact that their right to equal treatment has been judicially vindicated, are much more significant than the amount of recovery. Accordingly, in the court's judgment, this is not a case in which the value of counsel's services or their compensation may be fixed by an arbitrary or an adjusted percentage of the recovery effected for the plaintiffs.

2. *Absence of Time Records*

The absence of time records is significant; however, it is unfortunately true that a relatively large percentage of the bar does not keep time records. In addition, as counsel for defendant argues, at the inception and during much of the course of this litigation, it was highly debatable as to whether or not a statutory basis for the award of attorneys fees existed.

The undersigned is comfortable with and believes the estimates of time testified to by counsel for the following reasons: First, the lawyers giving the testimony appear to this court to be honest and candid, and appear to have made a good faith effort to make a conservative and accurate estimate of the time expended in connection with the performance of the work done in this case. Second, this court has reviewed the file in the light of the undersigned's experience as a practitioner, the estimates of time spent in performing the various tasks seem to this court to

be inherently reasonable. Third, as indicated in the earlier findings, the fact that counsel for plaintiffs spent materially larger amounts of time on this case than did counsel for defendant is not surprising for many reasons. One of the most cogent of the reasons is that during the entire course of this litigation until the recent decision of the Fifth Circuit Court of Appeals, the plaintiffs clearly had the uphill side of this case. A lawyer determined to win a case when he has the uphill side of the battle will, inevitably, spend significantly larger amounts of time than a lawyer who believes that he is likely to prevail without heroic effort. A lawyer with an intense determination to win will, simply by virtue of the essential facts of human nature, spend enormous amounts of time on a case to make certain that he is presenting his client's views and arguments in the best possible light. A review of this file reveals the intense determination to win of counsel for plaintiffs, and it was this intense determination to win which ultimately produced a successful result, and which resulted in the expenditure of the very large amount of time established by the credible testimony.

The undersigned is totally persuaded that counsel for plaintiffs did spend the time working on this case which they indicated they did by their sworn testimony.

3. *Lack of Obstinate Obduracy and Recognition of Counsel That They Might be Unreimbursed*

Arguments in paragraphs 3 and 4 set forth above appear to the undersigned to be essentially immaterial. This court's task is to set a reasonable attorneys fee, not to pass on obstinate obduracy or evaluate the equities.

*Instructions Concerning Preparation of Judgment*

At the in-chambers conference of January 29, 1979, counsel discussed with the court a form of judgment which was incomplete because of the unresolved matters set forth in this order. It would appear that those matters which must be resolved prior to the entry of a judgment have been resolved, and the court instructs counsel to submit a form of judgment for signature by February 15, 1979. If additional matters remain unresolved, counsel should request a hearing by communicating with the court's courtroom deputy.